1   as--because in their entirety they certainly are state-

2   ments against interest, but there are large numbers of

3   the responses shall we say or communications from JLC

4   1006 that aren't hearsay in any event because they are

5   questions or mere confirmations of what was just stated

6   to him by Sharee Miller.

7         I think, let me see what page it is first.  For

8   example, page 4, about a third of the way up from the

9   bottom, JLC 1006, you will never see him again, is cer-

10  tainly a statement against interest, but in its entirety

11  certainly this document to the extent it contains commu-

12  nications from Jerry Cassaday is a statement against his

13  penal interest and certainly as we have analyzed in this

14  matter previously, had he not committed suicide it cer-

15  tainly would be available and it would certainly subject

16  him to criminal liability for the homicide of Bruce

17  Miller.

18        The Court has previously gone over the factors

19  set forth in Poole as an alternative basis for conclud-

20  ing the reliability of a hearsay statement at page 165

21  and those factors certainly seem to me to fit here

22  again, voluntarily communicating with Miller, contempo-

23  raneously communicating with Miller regarding an inci-

24  dent that appears to have occurred just within a day or

25  less, from the time of the communications.  Certainly to

1    a friend, and those things all favor, as I said, a find-

2    ing and a conclusion of reliability.  So it would be

3    very difficult for this Court to conclude that Judge

4    Hughes made any error in his conclusion admitting this

5    information or in using it to bind this case over to

6    circuit court.  So to that extent again the motion would

7    be denied, and this will be admissible at trial.

8             Now, we can move on.

9             MR. NICKOLA:  Judge?

10            THE COURT:  Yes.

11            MR. NICKOLA:  Just so I understand, as it re-

12   lates to the Court's ruling today, the Court is ruling

13   that these are admissible as well as--

14            THE COURT:  Yes, that is what we are doing, yes.

15            MR. NICKOLA:  Okay.  Well, I--

16            THE COURT:  Absolutely.

17            Again, assuming they lay the foundation that

18   they already laid at the district court again before the

19   jury--

20            MR. NICKOLA:  Okay--

21            THE COURT:  --in the circuit court.

22            MR. NICKOLA:  Thank you, Judge.  I just wanted

23   to make sure that--

24            THE COURT:  Yeah.  Oh, they'd have to lay the

25   foundation and I assume they understand that they will

1      do that--

2               MR. NICKOLA:  All right--

3               THE COURT:  --with the witnesses--

4               MR. NICKOLA:  Thank you, Judge--

5               THE COURT:  --that deal with the procuring of

6      the disks or the transmissions from Virginia, whatever.

7               MR. NICKOLA:  Thank you, Judge.

8               THE COURT:  All right, all right.

9               Now, let's see here, if we can go on then, do

10     you want talk about any of the other instant messages at

11     this time, there is one I wanna ask all of you about as

12     long as we are right in this little category, and if I

13     could have Major show you of one, whether this is some-

14     thing anybody plans to use or was this just a mistake I

15     received it because it is impossible to conclude, for me

16     to conclude anything about it from looking at it.

17               (Counsel conferring)

18               Should we just--that is nothing that will be in-

19     volved in the case?

20               MR. PLUMMER:  No, your Honor.

21               THE COURT:  Just a mistake in--probably that I

22     got it, all right.

23               Are there other instant messages though, if

24     there are I just wanna know, how many are you planning

25     to likely, other than this particular one that we have

53

1    discussed specifically today?

2          MS. MABRY:   None other than the one you've just

3    addressed.

4          THE COURT:   This one.

5          MS. MABRY:   The others are electronic mail.

6          THE COURT:   Well, maybe I will have him show you

7    this one and just to be positive, I think this also was

8    one that, again, whether it was admitted I don't know,

9    but at the beginning I couldn't tell if there was some-

10   thing cut off the top of it and whether it is part of

11   something else or was used by you or will be used by

12   you, just clarify please.

13         (Counsel conferring)

14         MR. PLUMMER:   Your Honor, we need just another

15   minute.

16         THE COURT:   Yeah, you can take a minute, go

17   ahead, look at it, everybody take a look.

18         (Counsel conferring)

19         (At 10:28 a.m. court off record)

20         (At 10:31 a.m. court reconvened)

21         MR. PLUMMER:   . . . Mr. Nickola is still review-

22   ing the document--

23         THE COURT:   That's all right--

24         MR. PLUMMER:   --for the Court I would state that

25   is an instant message that the People would likely seek

54

1    admissibility of during the trial.

2           MR. NICKOLA:  Judge, as--as--

3           THE COURT:  Yes, you all wanna look at it more,

4    I don't know if you--I assume you have seen it, Mr.

5    Nickola, but--

6           MR. NICKOLA:  Well, it never has been sought to

7    be admitted at the district court level and--and,

8    frankly, it's not a part of and it was not identified in

9    the motion that the prosecutor had filed for today--

10          THE COURT:  No, well, I don't know if it was in

11   her motion--

12          MR. NICKOLA:  Well, I know, I know--

13          THE COURT:  --specifically, I guess I'll have to

14   dig it out.

15          MR. NICKOLA:  There was--

16          THE COURT:  Did you, see I don't know how you

17   have exactly exchanged, I assumed you have had discovery

18   and provided him with all the proposed exhibits before

19   now, Ms. Mabry.

20          MS. MABRY:  That's--that is true.

21          THE COURT:  And that's one of them?

22          MS. MABRY:  Yes.

23          THE COURT:  And the date on it is October some-

24   thing, I think 24 maybe--

25          MR. PLUMMER:  September 24th, your Honor.

1       THE COURT:   September 24.

2       MR. NICKOLA:   Yes.  Well, Judge, yes, Judge, not

3    only had they submitted me documentation, but there is

4    many more e-mails than their motion has sought as far as

5    their Motion in Limine to have the Court rule on today.

6    I mean, this is just their Motion in Limine regarding

7    specific documents to have the Court rule on now.   There

8    is many others that they're not apparently at least at

9    this time having the Court rule on.  This is obviously

10   one that is not identified in their--in their motion.   I

11   mean, the reason why I'm saying this, Judge, is that

12   this is a--a pretty detailed ten-page document and I'm

13   already looking at some things that I would suggest that

14   I--I would have had some arguments concerning 403 objec-

15   tions in terms of more prejudicial than probative.   If

16   the Court wants me to go sit down and spend--

17       THE COURT:   Well--

18       MR. NICKOLA:   --the time because I--I see things

19   right now where there--somebody indicates, so I "F" up

20   already, using the entire indication of the word and

21   that's within the first ten lines, and then I mean,

22   there is other foul language and I don't know all of the

23   exact details, but it's not a part of what they specifi-

24   cally thought to bring before the Court today, that's

25   all is what I'm suggesting.

                                56

1          MR. PLUMMER:  Your Honor, if I can speak for the

2     prosecution--

3          THE COURT:  All right--

4          MR. PLUMMER:  It--it wasn't the focus of any-

5     thing in our Motion in Limine, but it was a part of the

6     packet that we gave counsel some time ago that these

7     were pieces of evidence that we would very well be seek-

8     ing admission to in trial.

9          Now, counsel does mention, I think the Court

10    said some 170 some e-mails and there has been discus-

11    sions all along about trying to pare that down.

12         THE COURT:  We are gonna talk about it, but I

13    thought we could finish--the next thing I thought we

14    should go to is the phone call from Jerry Cassaday to

15    his brother, get that ruled on.  If there is anything

16    else that should be encompassed in the Motion to Quash,

17    argue any of that--

18         MR. NICKOLA:  Okay, yeah, the--

19         THE COURT:  --then I'll rule on the Motion to

20    Quash then we can go to the--

21         MR. NICKOLA:  Right, yeah, this would be because

22    this was not entered at district court--

23         THE COURT:  Not there, so we will save that for,

24    we will just put it aside and know that you wanna argue

25    about it and clarify the scope of any proposed exhibit

57

1    which is just setting it aside is the proposed exhibit

2    which may come in, it is of September 24 instant mes-

3    sage.  And again, I wasn't sure if I got all of it be-

4    cause my page at the top was a little cutoff and it

5    looked like there might be something missing on the top

6    of my page.

7         MR. PLUMMER:  Right, your Honor, just for the

8    record ours actually starts at page 2, cutoff at the top

9    like this, quote, and cry and cry, and goes through to--

10        THE COURT:  You don't have the prior page I

11   have?

12        MR. PLUMMER:  No, your Honor.

13        THE COURT:  I assume, Ms. Mabry gave me these

14   with the package, you know, some big package--

15        MR. PLUMMER:  Right--

16        THE COURT:  --was sent up there.  So I have one

17   that starts, and wait for him to die.

18        MR. PLUMMER:  Whoops, maybe I'm on the--I

19   thought that was on the next page.

20        MS. MABRY:  Go ahead.

21        MR. PLUMMER:  Is there a page number at the bot-

22   tom of yours, your Honor?

23        THE COURT:  Page 1.

24        MR. PLUMMER:  Well, it is the same document we

25   have except that's the front in--

58

1        THE COURT:  Major.

2        MR. PLUMMER:  At least in this book we don't

3   have a page 1.  I'm afraid in the course of all the

4   copying we may have just made a mistake in ours.

5        THE COURT:  I don't mind sharing it, it's not a

6   regular copy anyway.

7        MR. PLUMMER:  Thank you, your Honor.  Maybe dur-

8   ing a, if we do have a break maybe we could make a copy

9   of that page 1.

10        THE COURT:  I don't know if you can make any

11   copies, I have no idea.

12        MR. PLUMMER:  Oh, good point.

13        LAW CLERK:  Mr. Nickola, do you have a copy of

14   this document?

15        MR. NICKOLA:  Not handy, no.

16        THE COURT:  You have never seen it before

17   today--

18        MR. NICKOLA:  No, no, Judge, I'm not suggesting

19   that--

20        THE COURT:  Oh, okay.  I just didn't know--

21        MR. NICKOLA:  I'm not suggesting that--

22        THE COURT:  --if you had ever seen it even

23   before.

24        MR. NICKOLA:  Yeah, there was--there has been a

25   multitude of things that I have, but I--I can tell the

59

1    Court that there has never been a representation that
2    everything I have been given was gonna be used at court,
3    I mean, I'm just--I think that I heard that from counsel
4    and that is not correct.  I mean, things were turned
5    over to me pursuant to my disclosure demand and that's--
6    that's fine, but there was never any indication that all
7    of these things are gonna be admitted.  The Motion in
8    Limine is what I'm here today for, that is what is
9    scheduled for today and that is what I'm prepared to ar-
10   gue about, and my--my motions as well.

11           THE COURT:  Right.  We are working on yours now.
12   We are still on yours, I know.

13           MR. NICKOLA:  I--I know.

14           THE COURT:  Is it all right if, excuse me, I
15   have a little congestion today.  Shall we go onto the
16   phone conversation that I mentioned, that is also the
17   subject of the Motion to Quash Mr. Nickola had filed in
18   this case, and so, Mr. Nickola, if you wanna be heard
19   first, please.

20           MR. NICKOLA:  Yes, your Honor.

21           THE COURT:  See, your brief covered it.

22           MR. NICKOLA:  Yes, it did, Judge, particularly
23   page 16.

24           THE COURT:  Page 6--starting at page 16.

25           MR. NICKOLA:  There is--the phone conversation

1     in particular that we are dealing here with is, is the

2     phone conversation on November 7th, a discussion between

3     John Cassaday and Jerry Cassaday that was described, ob-

4     viously the transcript speaks for itself, Judge.   The

5     judge made partial rulings and then allowed some of the

6     rulings to--some of the conversation to come in.   My ob-

7     jections were as--as I have indicated in--in my brief

8     pursuant to People versus DeRushia, that the statements

9     were inadmissible hearsay, in that I think that the

10    court had allowed some of them in, his mental impres-

11    sions, but I think that the DeRushia case was pretty

12    specific, that unless the declarant talked about how

13    they feel then the statement should be excluded.

14         In this particular case, Jerry Cassaday did not

15    indicate how he felt.   There was just a brother's inter-

16    pretation of a tone.   There was nothing in terms of any

17    type of foundation or anything like that that as it re-

18    lates to the particular statement as it was offered to

19    the court, and we think that the judge was partially

20    right in terms of his ruling, we think the rest of it

21    should be deemed admissible as well because there is no

22    discussion about his state of mind, and we believe it is

23    inadmissible hearsay.   That's all I have on that issue.

24         THE COURT:   All right, thank you.

25         MS. MABRY:   Judge, Mr. Nickola is correct the

1  transcript pretty much speaks for itself but we would

2  submit that these two brief conversations that John Mi-

3  chael Cassaday had with his brother Jerry are absolutely

4  essential.   I--to put them in context, one occurs a--a

5  day or two before he murders Bruce Miller and the other

6  occurs the day after he returns from having murdered

7  Bruce Miller, where he is making arrangements for if

8  something to me you will find a briefcase telling--

9  telling you what to do and do that.

10      He talks about the fact that his brother ap-

11  peared to be emotionally upset when he made that phone

12  call, and clearly we believe the transcript establishes

13  that it is a state of mind exception under 803(3).

14      The--when he returns again it is a state of mind

15  exception when he in fact tells his brother you don't

16  wanna know, you don't wanna know.

17      We believe clearly it fits under that exception

18  to the hearsay rule, and we believe that the defense

19  will be eventually that he did not commit the murder, so

20  these are--this is absolutely relevant to a fact that is

21  gonna be at issue in this case.  We have the burden of

22  proof to show that Jerry Cassaday killed Bruce Miller as

23  part of a conspiracy with Sharee Miller.

24      Furthermore, we believe it also fits under the

25  exception of a co-conspirator statement too, it is in

1    furtherance of the conspiracy, he is leaving this brief-

2    case so that somebody knows what to do in case he is

3    caught or doesn't make it back, and we believe it fits

4    under that exception as well.

5          Another possible exception that we don't neces-

6    sarily wanna rely on is the fact that it wouldn't be of-

7    fered for the truth of the matter asserted.

8          The--the fact that a briefcase is found is gonna

9    be proven independently of this statement, it's simply

10   the fact that the statement was made, the timing of the

11   statement, and it goes to show that in fact it is more

12   likely than not, based on these statements, that Jerry

13   Cassaday killed Bruce Miller.

14          If I could have just a moment, Judge?

15          THE COURT:  Yes, ma'am.

16          (Counsel conferring with counsel)

17          THE COURT:  All right, Mr. Nickola, go ahead

18   then.

19          MR. NICKOLA:  Judge, we would simply ask the

20   Court to at least as it relates to the first conversa-

21   tion follow the court's decision, I don't believe that

22   he abused his discretion.  I think now throwing up argu-

23   ments that weren't even available at the time, I mean,

24   there is--there is arguments right now.  It's possible,

25   Judge, also, I mean, we are talking about a record for

1    the Court to review, now they are throwing up possible

2    hearsay arguments, that was something that wasn't even

3    felt viable at the time to argue before Judge Hughes in

4    this particular case.  You know, Judge, if I think of it

5    as--hearsay still exists in this particular state simply

6    someone saying that I'm okay, never mind, everything is

7    okay.  If that is considered an exception to hearsay

8    when there is no discussion whatsoever about the mental

9    intent, Judge, then I guess I'm--I'm a little bit behind

10   on the times because these statements were clear to

11   Judge Hughes and I think that in addition to that simply

12   people having a discussion is not an exception to the

13   hearsay rule.  I understand why they wanna get it in and

14   why they wanna try and make it an argument, but that

15   doesn't justify overruling Judge Hughes', finding abuse

16   of discretion, and now applying something that was never

17   argued before him because I think that necessarily would

18   be improper.

19        THE COURT:  Well, the testimony is, as I read it

20   here anyway in the transcript, was offered at page 93, I

21   was just reading it again, it isn't--it was so inter-

22   rupted with objections and rulings it's a little bit

23   hard to get the exact . . . (Court reading transcript)

24        All right, to be clear then there were two con-

25   versations as pointed out by the People, page 93 he is

1    speaking of the November 7, '99, conversation, and the

2    second conversation is discussed in the transcript at

3    page 98 which allegedly took place November 9.

4         It states about six o'clock--really there is

5    very little context on the November 9 conversation of-

6    fered other than he was home, that is what the testimony

7    is at page 98.  The brother was trying to get him to

8    tell him where he had been and his response on page 99,

9    Just trust me, Mike, you don't wanna know, and the

10   brother says I left the conversation at that.  Then Ms.

11   Mabry asked about a state of mind which was described as

12   fairly calm.

13        The earlier conversation on November 7 briefly

14   stated for this record, I'm trying to see if he said

15   what time it was on the day.  Oh, I see on page 94 it is

16   at approximately nine o'clock, November 7, 1999.  Again,

17   a very short conversation takes place, basically that he

18   is gonna get away for a few days and try to get his

19   thoughts together.

20        I don't know, Ms. Mabry, if you're really trying

21   to enter into evidence at this time the directions about

22   the briefcase under the bed, but if you--you are or are

23   not?

24        MS. MABRY:  No, the importance of the evidence

25   does not really have anything to do with the briefcase,

65

1    it has to do with the timing of the phone call and the

2    fact that it corroborates the fact that he is establish-

3    ing his absence for that period of time, that he is up-

4    set which would be consistent with him driving to Michi-

5    gan to kill someone.

6         THE COURT:  Right.

7         MS. MABRY:  And that when he is back he says,

8    you don't wanna know.

9         Now, is that consistent with going to the lake,

10   no.  So we are not gettin' into the truth of the matter

11   asserted for that.  We don't believe he went to a lake,

12   and believe me it will be a point of Mr. Nickola's that

13   John Hutchinson more likely committed this murder than

14   Jerry Cassaday.

15        THE COURT:  Well, 803(3) is an exception to the

16   hearsay rule or at least is not excluded by the hearsay

17   rule and it states as follows, a statement of the de-

18   clarant's then existing state of mind, emotional, sensa-

19   tion or physical condition, goes on, such as intent,

20   plan, motive, design, mental feeling.

21        Now, the Court certainly believes under the cir-

22   cumstances in this particular case a statement of intent

23   to go to the lake would be a state of mind that can be

24   admitted and obviously I understand it's really for the

25   reserve purpose in this case, but it is admissible as a

66

1    state of mind exception to the hearsay rule, and I don't

2    know, again, if you're trying to get the context of, I'm

3    home, in for the proof of the truth of the fact he is

4    home, or just that there was a phone call made to the

5    brother November 9, '99, about six o'clock in the

6    evening.

7         MS. MABRY:  The intent is to show actually the

8    statement, you don't wanna know.

9         THE COURT:  The other statement, all right.

10        MS. MABRY:  You don't wanna know where I was,

11   you don't wanna know.

12        THE COURT:  And that particular statement ap-

13   pears to this Court, in any event, to come in under the

14   exception we have discussed, two or three times state-

15   ment against interest, 804(b)(3), and the Court believes

16   both of those statements are admissible under exceptions

17   to the hearsay rule, and the Court notes as I have said

18   that Judge Hughes also relied on these statements in

19   binding the defendant over to circuit court, but they're

20   obviously offered for different reasons, the facts of

21   the calls, that's one thing, and that would not be hear-

22   say that there was a call.  I don't know if there is any

23   proof of any truth, I'm going to the lake is certainly

24   not for the truth but, in any event, it is certainly ad-

25   missible as I have previously indicated, 803(3) state of

1    mind exception to the hearsay rule, and the statement,

2    You don't' want to know, certainly would appear to this

3    Court to be admissible as a statement against interest,

4    804(b)(3).

5          So there would be no error by Judge Hughes in

6    relying on or admitting either of the conversations to

7    the limited extent we have discussed here today at the

8    time of trial.  So the Motion to Quash relating to those

9    two conversations would also be denied.

10         Now, let's see, Mr. Nickola, I'm looking at your

11   brief to see again if there are other matters we should

12   rule on.

13         MR. NICKOLA:  I believe, Judge, for purposes of

14   the Motion to Quash that--that exhausts those issues.

15         Judge, could I just in terms of a clarification

16   because I know--

17         THE COURT:  Yes, go ahead.

18         MR. NICKOLA:  And the Court has--has made the

19   ruling as well, is the Court making that ruling also as

20   it relates to this trial that you're going to allow the

21   statements--

22         THE COURT:  Yes, I am making the ruling finding

23   no error by Judge Hughes and indicating to you now in

24   advance that those things again would be admissible at

25   the time of trial, and again, assuming the brother

68

1    either testifies or his unavailability is established

2    and the transcript is read in.

3          MR. NICKOLA:  Okay.  I just wanted to make--

4          THE COURT:  One way or the other--

5          MR. NICKOLA:  --for--for purposes of the record

6    with that clarification--

7          THE COURT:  Yes--

8          MR. NICKOLA:  --make the record clear of--of my

9    objections so that they are preserved as it relates to

10    the Court's ruling now as to the trial and their admis-

11    sibility.  Thank you, Judge.

12          THE COURT:  All right.  So having discussed

13    those matters it appears to the Court that unless you

14    have further arguments on the Motion to Quash that cov-

15    ers the underlying bases for the Motion to Quash.

16          Mr. Nickola, as the proponent of that particular

17    motion, any other aspects of the motion you wanna argue

18    or have rulings upon today?

19          MR. NICKOLA:  Not as it relates to the Motion to

20    Quash, your Honor.

21          THE COURT:  All right.  Now, then, Ms. Mabry, if

22    you would be so kind as to prepare an order reflecting

23    the Court's decision that it will not quash the Informa-

24    tion in this case, finding there has been no abuse of

25    discretion on the part of the examining magistrate in

1    binding this matter over to circuit court.  The Court

2    finding no error occurred in admitting into evidence

3    various hearsay statements for the reasons already on

4    the record, thank you.

5           Now, there are Motions in Limine by both sides

6    and I think the effort was made by both of you to try to

7    have us all on the same page at the time of trial, to

8    hopefully not have to spend hours and hours arguing

9    these matters during the course of the trial.

10          I wanna return the transcript to the prosecutor

11   that they sent up for me to read, thank you.

12          Mr. Nickola's motion states as follows, Motion

13   in Limine.  I think what you were really trying to do is

14   get pre-trial rulings on the admissibility of these

15   various items, issue number one in the motion is photo-

16   graphs and/or videotapes of the defendant, Sharee

17   Miller.  So can we do that one, Ms. Mann or Ms. Mabry,

18   I'm sorry?

19          MS. MABRY:   That's--

20          THE COURT:   Taking his Motion in Limine.

21          MS. MABRY:   Okay.

22          THE COURT:   It's issue one in his motion.

23          MS. MABRY:   Judge, I believe that the photo-

24   graphs that Mr. Nickola is referring to, and they should

25   all be right here on the table next to your court

70

1    reporter, were the ones that were admitted at the pre-

2    liminary examination, many of which depicted the scene

3    of the suicide of Jerry Cassaday where he laid the stage

4    for committing suicide.  Putting photographs of his

5    loved ones in front of him, seating himself in a chair

6    facing out on the lake, facing--

7         THE COURT:  Why don't we have--have all the ones

8    you are speaking of from that scene marked and then we

9    will have numbers, whatever they are, okay, and then we

10   can--they probably can be referenced as a group I'm as-

11   suming, but let's see if we can do that.  Just give Ms.

12   Christman a minute, please.

13        MR. NICKOLA:  Judge, just for purposes of the

14   record, I believe my first issue only deals with the

15   videotapes and photographs they are seeking to admit--

16        THE COURT:  It says of the defendant, that was

17   true.

18        MR. NICKOLA:  That's correct, in a sexually pro-

19   vocative manner.  That's--that's really the--

20        MS. MABRY:  Oh, okay--

21        MR. NICKOLA:  --first issue.

22        THE COURT:  All right.  Well, I don't have any,

23   I've never seen any photographs, I saw--I was provided a

24   videotape, I have seen the videotape.

25        MS. MABRY:  I believe the photographs he is

71

1    talking about probably are contained within the e-mail

2    communications--

3         THE COURT:   My copies are--

4         MS. MABRY:   --that were submitted--

5         THE COURT:   --so black that I wouldn't know what

6    they are otherwise, it's very hard to tell anything

7    about what they are.

8         THE COURT:   The actual originals are in color

9    when they were scanned and sent.

10        THE COURT:   So you probably have those that

11   you--

12        MS. MABRY:   I have them with--I have the

13   originals--

14        THE COURT:   Have you seen the colors, the color

15   photographs--

16        MR. NICKOLA:   Yes, Judge.

17        MS. MABRY:   This is--

18        THE COURT:   Well, those are--that's the e-mails

19   you are talking about?

20        MR. NICKOLA:   Well--

21        MS. MABRY:   These--these--there are some photo-

22   graphs in here, while you received a black and white

23   copy and we all have black and white copies, these are

24   the originals here.

25        MS. MABRY:   Right.   I--I received black and

72

1    white copies.

2         THE COURT:  Do you wanna see those?

3         MR. NICKOLA:  (No verbal response)

4         THE COURT:  Go ahead and take a look while she

5    is marking these.

6         MS. MABRY:  I . . .

7         THE COURT:  I guess you will have to define for

8    me what is a so-called sexually provocative photograph,

9    I don't have any trouble understanding the videotape as

10   sexually provocative.

11        MS. MABRY:  Right.

12        THE COURT:  The photographs that you're specifi-

13   cally referring to you will have to show me.

14        MR. NICKOLA:  I'll show you, Judge.

15        THE COURT:  Okay.

16        MR. NICKOLA:  There is a series.

17        THE COURT:  Well, there--

18        MR. NICKOLA:  Got them right now.

19        THE COURT:  Thank you.  Let's see here.

20        So there are four, is that what--

21        MR. NICKOLA:  No, your Honor, there is more.

22        THE COURT:  Four, quote, sexually provocative,

23   end quote, photos, loosely defined.

24        There is four there.

25        (Judge conferring with clerk)

1    MR. NICKOLA:  Judge, I believe based on the ex-

2    hibits that I have gone through, I have highlighted the

3    ones that I believe are more prejudicial than probative,

4    they either show my client in a sexually provocative

5    manner or she is exposed, at least her breasts, and she

6    is partially naked.  I believe that if the Court wants

7    to hear what my arguments are as it relates to those

8    particular photographs, being that I'm the one that is

9    requesting to exclude those.  I have cited the authority

10   that--as it exists in my--in my particular motion start-

11   ing with at least the issue of the videotape.  I think

12   it is very clear that that is a tape that is an exotic,

13   sexually provocative tape.  I have indicated in the rec-

14   ord before that I'd be willing to put forward a stipula-

15   tion that that is the case.  I think the prosecutor is

16   going to be able to provide, from their prospective at

17   least, information that suggests that the--Mr. Cassaday

18   and Ms. Miller had a sexually provocative relationship.

19   And as a result of that there is going to be an ample

20   amount of evidence to show that, absent showing my cli-

21   ent naked before a jury engaging in sexual activities.

22        Certainly, Judge, that--there is ample amount

23   of information to do that, and--and to play that tape

24   before a jury is simply calculated to have the jury pass

25   moral judgment.  And frankly, Judge, that particular

74

1    tape upon admission I--I would think would at least re-

2    quire enormous amount of voir dire with the prospective

3    jury pool into their sexual beliefs, what they feel is

4    appropriate, inappropriate.  It deals on all different

5    facets of morality, and I think that it obviously by

6    virtue of a stipulation can set forth, at least in the

7    jury's mind, along with the other information, it

8    doesn't have any ill effect on the prosecutor's case

9    other than to, you know, basically put my client in

10   front of the jury as it relates to the videotape.  And

11   the Court has seen the videotape from my understanding

12   and I think the videotape speaks for itself in terms of

13   my arguments.

14          Now, as it relates to the photographs, I believe

15   that there are photographs that I have showed the Court,

16   and again my copies weren't colored as well, mine were

17   Xeroxed copies so, some of which were dark and you

18   couldn't really tell what they depicted.  I believe at

19   least I--I've tabbed the at least going through the--the

20   prosecutor's proposed exhibits that they at least had

21   indicated for their purpose--their Motion in Limine, the

22   photographs that show at least what would be depicted as

23   my client in either sexually provocative manner.  There

24   are several--looks to be--to--to appear to be older pic-

25   tures where she is on a bed scantily clothed, wearing

75

1  panties, also with her breasts exposed, several of which

2  of the pictures are--could be interpreted to be in a

3  sexual inviting type of way, I suppose.  Other ones may

4  not be arguably, but still I think that as it relates to

5  this particular jury the points that they're trying to

6  make are points that can be easily made with documents

7  that this Court has undoubtedly, based upon its already

8  made rulings, going to be allowing, and so I think that

9  it can be done in very different way without subjecting

10  these jurors again to seeing images of--of my client

11  that I--I think are not necessary to prove their par-

12  ticular points.  And I think that obviously the--the

13  reason they want to put them in is it certainly cracks

14  into at least depending on who the particular juror is

15  and depending on what their religion or what their mor-

16  alistic background is, it--it certainly invites a mas-

17  sive inquiry in terms of how they perceive these things

18  because obviously if that was a part of the evidence go-

19  ing to be admitted then I just think that every single

20  juror is going to have to have some specific inquiries

21  in terms of things that they're not gonna be, and I

22  don't think it would fool anybody, but I don't think--I

23  think the Court could recognize as well that a lot of

24  people are not going to speaking frankly about sex be-

25  cause I would be willing to say that the majority of

76

1   people aren't comfortable speaking about it anyway,

2   whether it is with their spouse or close friend, but

3   when we are talking about a First Degree Premeditated

4   Murder case where my client is facing life with no pos-

5   sibility of parole, I have but no lesser obligation as

6   her sole advocate to get into those areas, and I--I

7   think that a lot of that, although that may be a part of

8   where voir dire is at anyway to certain--to a certain

9   extent, but as it--it relates the--the graphic nature of

10  the photographs we can get around that, Judge, and--and

11  I think that suffice to say with the Court's rulings on

12  other matters and stipulations to the fact that they had

13  a sexually provocative relationship, it's--it's--all it

14  is is piling on in attempt to cloud a--cast a cloud over

15  my client that she is some sort of immoral person.

16      MS. MABRY:  We have to show that Sharee Miller

17  or that Jerry Cassaday killed Bruce Miller because of

18  this woman, Sharee Miller, because they had an affair.

19  No, I don't think so.  I think you've got to get in,

20  we've got to get into the depth of how she manipulated

21  him, how she drew him in, that this was not a one-sided

22  relationship, it was a two-sided relationship.  We need

23  to get into the fact that these photographs that he is

24  talking about were retrieved off of the shooter's hard

25  drive, on his computer, that they were sent by her.

1          The videotape for Jerry's Eyes Only was found at

2     the scene of the suicide of the shooter, they were very,

3     very much involved, something that mere e-mails cannot

4     project.  It is part of her entire scheme of manipula-

5     tion, they are going to be asking how could this guy

6     get--be manipulated into killing for this woman, how?

7          These videotape--that videotape as well as the

8     photographs are more probative on a very, very relevant

9     issue than prejudicial.  I agree they are prejudicial to

10    her.  I agree that they're probably embarrassing to her,

11    but they're absolutely essential to the prosecutor's

12    case to show why this man would kill for this woman.

13         THE COURT:  I happen to notice on the second set

14    you sent up here on October now, four of the 12, I be-

15    lieve I counted 12, are exactly the same, and there are

16    two more that are the same picture.  Are you familiar,

17    do both of you see it that way?

18         MR. NICKOLA:  Well, Judge, it at least looks as

19    if there is--

20         THE COURT:  It's either exactly the same or a

21    hand might have been moved slightly over--

22         MR. NICKOLA:  Multiple--

23         MS. MABRY:  Okay.

24         MR. NICKOLA:  Right.

25         MS. MABRY:  And--and I should note for the

1    record that some of the photographs that are being ob-

2    jected to are during the time periods when Sharee Miller

3    is conveying to Jerry Cassaday that she is pregnant with

4    his child, and so he wants to see, you know, how her

5    pregnancy is developing, so she sends him pictures where

6    --of her naked stomach and breasts where she, you know,

7    pushing out her stomach.

8         MR. NICKOLA:  Judge, just in response to that, I

9    believe the prosecutor in their Motion in Limine have

10   approximately 100, almost 200 exhibits, many of which

11   they have and they are going be forthcoming with, depict

12   my client doing the same thing clothed, without ques-

13   tion, and she is not going to say that that's not true.

14   I mean, there is probably at least ten, 15 photographs

15   where the same thing is depicted without exposing her

16   breasts in a little negligee, oh--and some of which

17   squeezing, you know, the same--the same as the Court can

18   see, and--and if the Court were able to see those be-

19   cause that is gonna be the next aspect of it, if the

20   Court reserves its ruling to see that, it's gonna see

21   that there is ample enough information and photographs

22   to suggest that.

23        And my only response to her statement is, is

24   that the Court has had an opportunity to see these e-

25   mails and review these e-mails.  The content of the

79

1    e-mails in terms of I love you and this and that, that

2    obviously, I mean, what word describes somebody's al-

3    leged ability to manipulate somebody other than to be in

4    love with them, but to show this tape or this tape is

5    nothing more, less, or more probative to show that if

6    they wanna--are trying to prove this manipulation, I

7    don't see what evidence or what argument she is making

8    that this tape makes it more probative that she could

9    manipulate him.  It simply a sexually erotic tape that

10   is found in his apartment and it's--it's Ms. Miller.  I

11   mean, I--I don't see how that tape does anything other

12   than make a jury have this vision of my client exposed

13   in complete nudity performing as the Court knows what it

14   is performing and the jurors are.

15        I--I would simply say that I--I don't--I can't

16   see where a trial could be a fair trial with this image

17   in a jury's mind when it can be easily circumvented and

18   they have got ample opportunity with the information

19   they have, I mean, the Court has already ruled the sui-

20   cide note is in, he explains all this, they are gonna be

21   able to show the pregnancy.  I mean, they're gonna be

22   able to get into all this with their instant messages

23   based upon the Court's ruling, so to make it sound like

24   this video is the only thing holding this case together

25   I think is--it shows the obviousness of why they want it

1   in and that's simply to inflame the jury and that's ex-

2   actly what this tape will do, it will inflame the jury

3   and my client would not be entitled to a fair trial if

4   in fact it was admitted.

5          MS. MABRY:  Judge, if I could?

6          THE COURT:  Yes.

7          MS. MABRY:  Mr. Nickola did mention that there

8   are photographs where--that depict Ms. Miller clothed

9   and pregnant, but we're not introducing these photo-

10  graphs to show that she was pregnant.  We don't believe

11  that she was ever pregnant.

12         THE COURT:  Understand.

13         MS. MABRY:  We are introducing these photographs

14  to show the intensity of their relationship and Jerry

15  Cassaday's response to the intensity of that

16  relationship.

17         Also, I should note for the record that at least

18  Mr. Nickola has been quoted in The Flint Journal as say-

19  ing that Mr. Cassaday somehow was stalking this defen-

20  dant and that she really didn't have much to do with

21  this relationship.  That he was the aggressor and just

22  kind of taken off on his own, and that could be a possi-

23  ble defense at trial that either, one, he didn't do it,

24  or he just took off and did it on his own.  And if the

25  jury is not aware of the intensity of this relationship

1    as advanced by this defendant, they're gonna be left

2    with an inadequate picture, and they are definitely more

3    probative than prejudicial.

4         If there are duplicate photographs, then, yes,

5    they can be taken out--

6         THE COURT:  Well, see there is another issue

7    there I suppose if you look at the time of transmission,

8    like, appear to be the same day but, 10/25/99, a few

9    minutes apart.  So there is one, for example, I mean the

10   time states 8:49 and then 8:50 and then we got 8:52,

11   then the next day, no, it's still the same day, I'm

12   sorry, 10/25, then we move over to 9:25 in a negligee,

13   9:27, 9:28, 9:29 and there is one--the next day then we

14   go to 9:30.  I haven't studied how they fit right into

15   the e-mails, I'm not, in terms of intermeshing, with the

16   messages right off the top of my head here 'cause mine

17   were so black I couldn't quite make out what were--what

18   was in the pictures, so let me make the comments about

19   the video first.

20        I--I'm not in a position to have the whole jury

21   see that whole video, I--I think a couple of minutes

22   would be all, and I think the initial two or three min-

23   utes would be more than enough to give the jury the fla-

24   vor of what is going on.  And so, I'm not quite sure if

25   you want me to be the one to cut or let you two be the

1   surgeons, shall we say.  I don't want to keep the People

2   from having the jury see what it--that it exists, what

3   it is, but we don't need to go through the whole entire

4   thing, so--

5           MS. MABRY:  Judge, the only thing I would ask

6   for if we are going to only introduce a portion is,

7   there is a portion on the video that it shows that she

8   is video taping herself, shows she has the computer

9   screen, that she also has the monitor and the--she can

10  see herself videotaping herself--

11          THE COURT:  Right.  I think that's at the

12  beginning.

13          MS. MABRY:  Pardon?

14          THE COURT:  I think that's at the beginning.

15          MS. MABRY:  Okay.

16          MR. NICKOLA:  Judge, within a very short period

17  of time I believe in terms of the videotape, I under-

18  stand where she is at, and if the Court is going to rule

19  that part comes in, that doesn't get into the sexual be-

20  havior and whatnot, but it quickly--

21          THE COURT:  Well, it will--

22          MR. NICKOLA:  --gets to the point within--within

23  two or--

24          THE COURT:  As she starts to take off her

25  clothes I'll get into that, but I'm not gonna get into

83

1   the masturbation, okay, we are just going to stop and

2   all of this fondling stuff, I'm not going to have the

3   jury see it in my court.  So that's it.  The beginning

4   that she starts to do it and gets her start--self on the

5   bed and arrays(sic) herself in this position, I'm--in

6   front of the camera that Ms. Mann mentioned and starts

7   to strip off her clothes, I think I'll just tell the

8   jury I'm not--that will be enough and that will be it,

9   so.

10          MS. MABRY:  Judge, I was wondering if we could

11  just show, if you are going to show a couple minutes of

12  the beginning, if we could make a statement to the jury

13  that the rest of the tape contains a--

14          THE COURT:  Additional graphic material that I

15  do not believe is--would be more prejudicial than

16  probative.

17          MS. MABRY:  I--

18          THE COURT:  Unless you don't want me to say it

19  'cause I'm gonna rule it--

20          MS. MABRY:  My request would--would be to simply

21  say that the rest of the tape shows her masturbating,

22  end of story.

23          THE COURT:  End of it, instead of show it--

24          MR. NICKOLA:  Well, I--I--I would object to it.

25  I--I would object and I'm not stipulating to anything,

84

```
 1        if we going to start showing the video--

 2               THE COURT:  Do you want it all shown, then it

 3        all will be shown--

 4               MR. NICKOLA:  No, I didn't--I didn't--

 5               THE COURT:  --it's up to you.

 6               MR. NICKOLA:  Judge.

 7               THE COURT:  Yes.

 8               MR. NICKOLA:  I'm commenting on what the Court

 9        has already ruled, so I'm not arguing with the Court,

10        I'm simply trying to make a record here concerning this

11        case, so I'm not criticizing the Court, I'm--I'm re-

12        sponding to what she is saying, she has indicated she

13        wants an instruction which I have not seen, I can get

14        the gist of what she is saying, but I'm just indicating

15        to the Court that I'm objecting.  Before I said I would

16        offer a stipulation to resolve the whole problem, I'm--

17        I'm not offering that stipulation now, and I would ob-

18        ject to any instruction.  I think it's pretty obvious

19        what may or may not happen after that, but I don't think

20        that giving blow by blow details to a jury, I think

21        that's just as prejudicial as is probative.  More preju-

22        dicial I should say than probative, your Honor.

23               THE COURT:  All right.  The Court feels it has

24        wide discretion on the admissibility of evidence and I

25        have seen the video and I think to have the jury see it
```

1 is unnecessary.  I think two to three minutes maybe, I'm

2 not sure of the timing because I haven't seen it for

3 several months, would be more than enough for the jury

4 to know what it is and who is in it and how it is being

5 created and I think if she wants to have a statement

6 that the rest of it shows her masturbating that would

7 certainly allow her to have the evidence without having

8 your client subjected, frankly, to having a jury see

9 that tape.  So I just think that's a better way to re-

10 solve it.

11     MR. NICKOLA:  So at the point--

12     THE COURT:  One sentence, the remainder of the

13 tape will not be shown in which the defendant mastur-

14 bates, that's end of it, one sentence.

15     MR. NICKOLA:  Now, just--just to--to--

16     THE COURT:  And I know you're objecting to any

17 of it being shown--

18     MR. NICKOLA:  No, I know, Judge, and just to

19 clarify 'cause I--I--there were the two tapes that were

20 apart of this reviewed today and the Court is indicating

21 that at the point in time after the set up is started

22 that at the time of the disrobe, that the--the beginning

23 process of disrobing that's where the Court is gonna cut

24 it, right?

25     THE COURT:  Somewhere right in that area.

86

1          MR. NICKOLA:  Because I believe that two or

2     three minutes into it we're well into the--

3          THE COURT:  Well--

4          MR. NICKOLA:  --graphic material--

5          THE COURT:  --I can tell you I'm not sure I'm

6     getting the timing but it takes--

7          MR. NICKOLA:  Right--

8          THE COURT:  --a minute or two by the times she

9     sets it all up and gets on the bed and I don't know, but

10    if you have any trouble agreeing on the, you two can

11    look at it and I will sit with you and look at it again

12    right before we play it if you want me to, to be sure we

13    all agree how far it will be played.

14         Mr. Plummer.

15         MR. PLUMMER:  Your Honor, if I may?

16         THE COURT:  Yes, sir.

17         MR. PLUMMER:  Your Honor, I think it might be

18    safest if we were to sit with the whole tape and if we

19    could agree on that stopping point with Mr. Nickola--

20         THE COURT:  Yeah, try to do it--

21         MR. PLUMMER:  --to--to then tape that to a copy

22    so that there is no chance that anymore could be seen.

23         THE COURT:  Well, I'm favor of that, too.

24         MR. PLUMMER:  And--and label it as that one is

25    labeled--

87

1       THE COURT:  That one--

2       MR. PLUMMER:  --for Jerry's eyes so that we ba-

3   sically have that same tape but nothing after that to--

4   for any risk--

5       THE COURT:  So there is no error, no possibility

6   of an erroneous portrayal of anymore of it--

7       MR. NICKOLA:  Right.  And that--

8       THE COURT:  --or playing of anymore--

9       MR. NICKOLA:  --and just for purposes of--of the

10  record, I don't oppose that way of handling it, your

11  Honor, and I know the Court may be thinking why are you

12  talking still, but believe me I have been involved in

13  the Court of Appeals on issues like this--

14      THE COURT:  I understand--

15      MR. NICKOLA:  --where nothing was said and they

16  construed--construed stipulation, so if I were to--

17      THE COURT:  No, I understand--

18      MR. NICKOLA:  --agree that that's the proper way

19  to handle it, Judge, I wanna make the record clear that

20  I'm not waiving any objections to the videotape for any-

21  one who may read this--

22      THE COURT:  Understand you're not, you're ob-

23  jecting to the whole tape and I'm allowing a portion of

24  the tape only.

25      MR. NICKOLA:  Thank you, Judge.


88

1          THE COURT:  With a brief summation of what is on

2     the rest of the tape.

3          MR. PLUMMER:  Right, and I'm just suggesting,

4     your Honor, that we actually introduce a copy--

5          THE COURT:  All right.  We will try to do that,

6     I don't know what equipment, I don't know where the

7     equipment, whether the sheriff or if you have to go to

8     Lansing, I don't know where you do it, but I suggest it

9     happen.  They have it here, Detective Shanlian, you have

10    it?

11         DETECTIVE SHANLIAN:  (No verbal response)

12         THE COURT:  Photographs, do you wanna comment on

13    those?

14         MS. MABRY:  Judge, just briefly, again they're

15    more probative than prejudicial.  This defendant led

16    Jerry to believe that he was avenging the killer of two

17    sets of babies, not one, but two sets of babies, and so,

18    part of her scheme to get him inflamed and involved in

19    this alleged parenthood was to send these photographs to

20    inflame Jerry, that yes, I'm pregnant, and the other

21    photographs of her just disrobed were to show the inten-

22    sity of their relationship otherwise the jury will not

23    quite understand why somebody would kill just for a sim-

24    ple affair.

25              To the extent that there are duplicates we don't

89

1    object to admitting just one of each of the photographs.

2         THE COURT:  They're not exactly duplicates but

3    they're--the hand, the arm is moved slightly above and

4    below the abdomen.

5         I think one, unless there is something I'm miss-

6    ing in terms of the e-mails that correspond to them that

7    one of those is enough, that is what I'm saying.  I'll

8    only allow one pregnant, allegedly pregnant photo in the

9    negligee and then there was a page that has like four or

10   five depicting the abdomen and breast area and it ap-

11   pears that is all, I don't know those would have been

12   sent, I guess the way they do the submissions or trans-

13   missions I should say, is as a group, is that right--

14        MS. MABRY:  No, no--

15        THE COURT:  --or did you all compile this into

16   one, I don't know how that works?

17        MS. MABRY:  I would ask that if there are dupli-

18   cates on a single day that we will just put one in.  We

19   want to show that she had a flurry of, you know, activ-

20   ity over a period of days to inflame him, and then soon

21   after he gets these photographs she say, oh, by the way,

22   now Bruce killed your babies.

23        THE COURT:  Right.  But take this one, it's Oc-

24   tober 27, which it has four or five on a page.  I don't

25   know if these were transmitted in one--

90

1          MS. MABRY:  That was one transmission.

2          THE COURT:  Mission, all right.

3          Well, in any event, the Court has made a ruling,

4  the others will come in.  I understand the theory as to

5  the scheme of the Defendant Miller to entice, shall we

6  say, or inflame Cassaday so that he would accomplish the

7  murder of Bruce Miller and it's part of that case.  So

8  we will just take out duplicates, but other than they

9  will come in.

10         Now, I'll return these also.  I sent back the

11  September and these are the October set.

12         Let's see now.  Next issue, number two, I think

13  we need to just go ahead and start up with the e-mails

14  because the next issue deals with the communications or

15  discussions between the parties Miller and Cassaday.

16         MR. NICKOLA:  Yeah.  And, Judge, just for--

17         THE COURT:  Yes--

18         MR. NICKOLA:  --purposes of the record, the is-

19  sues after two, I think, deal with the Court's rulings

20  that the Court has already made, the Court--as far as

21  my--my issue number three is the ruling that this Court

22  already made, I believe, that my objections were--are

23  preserved and as well as the suicide note--

24         THE COURT:  Which is--

25         MR. NICKOLA:  --and then finally I believe num-

1   ber five as well as the instant, AOL instant messages

2   the one that was dated November 8th.  Those three issues

3   the Court has already addressed and made rulings on.

4           My--I just offer the--preserve the objection for

5   the record, but I would agree with the Court that issue

6   two really ties in with the prosecutor's Motion in Lim-

7   ine where they seek to admit the documents.

8           THE COURT:  And I think we have covered really

9   everything in yours except the package of e-mails,

10  right, Ms. Mabry?

11          MS. MABRY:  I'm sorry, the--

12          THE COURT:  Your Motion in Limine--

13          MS. MABRY:  Right--

14          THE COURT:  --also raised issues that I think

15  I've ruled on except for the package of the e-mails.

16          MR. NICKOLA:  The only thing I would suggest to

17  the Court is, is that I believe there were a couple

18  other issues that the prosecutor's Motion in Limine

19  dealt with in sort of a noxious sort of way because

20  they're not simply cut right out but they are mentioned

21  in there, so I think at least in terms--

22          THE COURT:  Well--

23          MR. NICKOLA:  --probably are--

24          THE COURT:  She speaks about a Motion in Limine

25  about a polygraph, I'm assuming we are all agreeing on

92

1    that issue, I'll--

2        MS. MABRY:  I would assume so, but I wanted to

3    make that clear for the record--

4        THE COURT:  But--

5        MS. MABRY:  --that there would be no mention of

6    that--

7        THE COURT:  To whatever extent there may be a

8    polygraph involved it is inadmissible and I will not

9    permit it.  That's easy.  That may be the only easy

10    thing we have today.

11        MR. NICKOLA:  There were--it--it does just say,

12    Judge, as it relates to the, for technical purposes, al-

13    though it is not specified, but in the introduction

14    they're seeking to admit all physical evidence that was

15    admitted at the preliminary examine and all statements

16    introduced at the preliminary exam.

17        Just my response to that would be I would object

18    to the statements.  I don't know if at this point

19    they're trying to say that just admit the transcript,

20    but I would object to that.  They--they say that in

21    your--

22        THE COURT:  You don't mean the whole transcript

23    of district court hearing do you, Ms. Mabry?  That is

24    not what she meant.

25        MS. MABRY:  No, I don't believe, no.

1          MR. NICKOLA:  That's what--

2          THE COURT:  No.

3          MR. NICKOLA:  Right, but that is what it says

4     in--in the introduction, Judge, so I'm--I'm just trying

5     to clear that up, that's why I say I don't think it was

6     something that was specified, but it is--they do say

7     they wanna admit all physical evidence admitted at the

8     preliminary exam and all statements introduced at the

9     preliminary exam.

10         MS. MABRY:  I would agree that it is all the

11    physical exhibits which again we have on the counsel ta-

12    ble over here, and also, we have met with Mr. Nickola

13    privately at the pre-trial and reviewed all the poten-

14    tial evidence which may be introduced at trial.

15         THE COURT:  You attached a list I know of some

16    items--

17         MS. MABRY:  Right--

18         THE COURT:  --there and I assume you all have

19    seen them, but if you need the ruling on some item,

20    fine, but why don't we start with the booklet now of

21    e-mails--

22         MR. NICKOLA:  Right--

23         THE COURT:  --which both of you want to get the

24    clarification on.  Is that a good idea, is that where we

25    are?  Do you wanna take about a ten-minute recess before

94

1    we do it--

2              MR. NICKOLA:  Yeah, could you.

3              THE COURT:  Do that?  Okay, we will a ten-minute

4    recess and then start the e-mails.

5              (At 11:25 a.m. court recessed)

6              (At 11:39 a.m. court reconvened)

7              THE COURT:  All right, everybody let's be seated

8    and see if we can start now with the packet of e-mails

9    in the matter of Miller, and I think the first one just

10   for the record that I have received has a date on it at

11   the top 8/28/99, just so we're all--can we look--look at

12   them in order, I think chronologically in order if that

13   is agreeable with everybody.

14             MR. NICKOLA:  It's agreeable with the defendant,

15   your Honor.

16             THE COURT:  I think that's the first one, let's

17   see here.  Do you think that's the first one, do you

18   have one any--

19             MS. MABRY:  Eight/twenty-eight, yes.

20             THE COURT:  Look at the top, 8/28/99.

21             MS. MABRY:  Hi, sweetheart, here is my schedule.

22             THE COURT:  That's the first one everybody has,

23   just to be sure?

24             Now, I--a handwritten list of these was made by

25   my office and I don't claim it's totally accurate or to-

95

1    tally complete, but perhaps as we go through today, I

2    think each of you picked up a copy of it, I know Mr.

3    Nickola asked to have a copy of it.

4         Ms. Mann, did you get a copy, handwritten?

5         MS. MABRY:  (No verbal response)

6         THE COURT:  Okay.  So I was just using that as a

7    tracking device to keep track of how many and what dates

8    we're talking about just to help me as we went through

9    this, so.

10        It's my--I wanna understand something now from

11   the People in the case.  Are you indicating to the Court

12   that you're going to be offering or your desire would be

13   to offer each and every page of this package of

14   materials?

15        MS. MABRY:  That is, but I will tell you that

16   since then Mr. Plummer and I have met and pared down and

17   excluded some of the e-mails that we feel that we can

18   live without, out of the packet that was submitted to

19   the Court and to Mr. Nickola.

20        THE COURT:  Do you have a record that you're us-

21   ing in terms of your preparation that just goes through

22   and documents dates of transmissions?  See what I won-

23   dered, is this everything that was transmitted between

24   8/28 and the last one which is--

25        MS. MABRY:  No--

96

1          THE COURT:   --a photo of 11/12?

2          MS. MABRY:   No, very--

3          THE COURT:   That's--mine is it then, what I have

4     or there is a lot--

5          MS. MABRY:   Stack--

6          THE COURT:   --more than this--

7          MR. PLUMMER:   Here--

8          THE COURT:   --but these are ones you picked out

9     for now, I mean how, what it is--

10          MR. NICKOLA:   Well, Judge, I think--I think in

11     terms of what Ms. Mann--Mabry has indicated is that

12     there--there is a great deal more e-mails.

13          THE COURT:   There is even more than these?

14          MR. NICKOLA:   Yes, many more.

15          MS. MABRY:   I'm holding up right now for the

16     Court the ones that we weeded out to begin with.

17          MR. NICKOLA:   Right.   And that's what the Court

18     has.

19          MS. MABRY:   These are not being sought to be in-

20     troduced into evidence and it is at least two inches--

21          THE COURT:   Okay.   Eight/twenty eight 'til 11/12

22     which is a picture of a couple polar bears it looks

23     like, that's the pack I was given and that--

24          MR. PLUMMER:   Right.   That's--

25          MR. NICKOLA:   Right--

97

1          MR. PLUMMER:  --the first paring down.

2          THE COURT:  That's the first pare down.

3          MS. MABRY:  Right, from--

4          THE COURT:  Okay--

5          MS. MABRY:  --this and this is what we had to

6     begin with, three inches--

7          THE COURT:  Um-mm--

8          MS. MABRY:  --we took two inches off.

9          THE COURT:  Okay.  So I just wanna understand

10    now.

11         Now, probative value, beyond the fact of the re-

12    lationship that it was conducted over the Internet in

13    cyberspace, so to speak, to a large extent, could we

14    just take 8/28/99, I mean, look at it.  I read it, I

15    tried to read these over a couple different times for

16    different reasons.

17         MS. MABRY:  I could address the probative value

18    of that first one, Judge, because I have highlighted

19    ones that I felt that we really needed and this would be

20    one of them for the reason that the third sentence from

21    the bottom, Jerry writes, print it out.  He gives her a

22    schedule and he says print it out.

23         Now, there was some mention at the preliminary

24    exam about, now why would he say that instant message?

25    Well, he believes in saving and printing out for direc-

98

1    tions, a planner, he is a planner, he is a homicide

2    detective, he documents everything, this confirms that.

3    Here is my schedule when you come, print it out, keep

4    it.  The same thing he did with the instant message.

5          THE COURT:  So really all you're saying all you

6    wanted to get in in this whole document was--

7          MS. MABRY:  Well, it shows that--

8          THE COURT:  --print it out?

9          MS. MABRY:  No, no, it--it also shows that they

10   are actually meeting physically.  They don't just commu-

11   nicate by e-mail.

12         THE COURT:  Well, I know there is at least a

13   couple of times they do, I don't know how many--

14         MS. MABRY:  Right.

15         THE COURT:  I probably don't have any idea how

16   many actually, but several of a--

17         MS. MABRY:  Right.  And it shows the extent of

18   their relationship by 8/28 of '99.

19         The next e-mail I should point out--

20         THE COURT:  Well, let me ask, let's try to fig-

21   ure out how we are gonna do this because at the begin-

22   ning you're right, it talks about, let me give you my

23   schedule so you will know how it all falls out and then

24   at the bottom, print it out.

25         Obviously, there is nothing in this whole docu-

1    ment that deals with the planning of the death of Bruce

2    Miller, so I wanna understand exactly what probative

3    value the document has on an element and issue in the

4    case.

5          MS. MABRY:  Judge, just as they said in

6    Vandervliet regarding the prior bad acts, they used the

7    term that the jury would be left with an conceptional

8    and chronological void without these e-mails.  They

9    would be lost as to what occurred between these two in-

10   dividuals prior to killing Bruce Miller.

11         THE COURT:  Well, I would suggest, let me ask

12   you a question.  Is anything on it offered for the

13   truth, I don't thinks so?

14         MS. MABRY:  No, no, and most of these--

15         THE COURT:  Not a word--

16         MS. MABRY:  --they're being offered as--as you

17   correctly point out, for the untruth to tell you the

18   truth.

19         MR. NICKOLA:  I guess I don't get that.

20         MS. MABRY:  The fact that she was pregnant, we

21   don't believe she was pregnant--

22         THE COURT:  For example.  But those are her,

23   again, those may be her statements which again to the

24   extent like we talked about--

25         MS. MABRY:  Right--

100