1          THE COURT:  --in the instant message, to the

2     extent the e-mails are coming from her, we don't have a

3     problem that we are addressing today because those are

4     coming in under 801(d)(2).

5          MS. MABRY:  Right.

6          THE COURT:  To the extent you are seeking to ad-

7     mit again hearsay statements from Jerry Cassaday that's

8     where we have to get into our--

9          MS. MABRY:  And--

10          THE COURT:  --exceptions to the hearsay rule or

11     if it isn't hearsay, if it has some other purpose and

12     that's why I'm trying to clarify.

13          MS. MABRY:  Right.  If you want me to just ad-

14     dress the e-mails from Jerry I can do that.

15          THE COURT:  Okay.

16          MS. MABRY:  We believe that they're admissible

17     under a number of different theories, and I'll start out

18     with the least favorite one of the Court, I know, which

19     is the catchall exception, and we believe the thrust of

20     the catchall exception is that they're trustworthy, that

21     they bear adequate indicia of reliability.

22          In this particular case you would hear testimony

23     that these e-mail transmissions were recovered from

24     Jerry Cassaday's computer and recovered even after the

25     defendant was charged, that they are self-

1    authenticating.  I don't believe for a minute that Mr.

2    Nickola believes that anything was altered on these,

3    that they are not reliable.  Jerry Cassaday would have

4    no idea that the police after his death would go in

5    there and retrieve all these e-mails.  So they are

6    authentic, they're reliable, we believe that they sat-

7    isfy all the requirements for the catchall exception.

8         Additionally, they are statements of co-

9    conspirators, it's all part of a big picture, a big tan-

10   gled web of how we get to the killing of Bruce Miller,

11   and again the jury will be left without a void if--if

12   they don't get that big picture, and probably there are

13   also statements against interest as they apply to Jerry.

14   But probably most importantly what these e-mails depict

15   from Jerry Cassaday's point of view is his state of

16   mind.  He is madly in love, he believes that Sharee is

17   madly in love with him.  He believes that she is going

18   to leave her husband; he believes she is gonna move out

19   there, start a new life with him.  He--he meets her

20   children, that--that's talked about in one of the e-

21   mails, she come out there and meets his child.  It talks

22   about building this life together, then it--he believes

23   that she is in an abusive relationship.  He believes

24   that what he had first thought was merely emotional

25   abuse is in fact emotional and physical abuse and that

102

her husband has raped her, that her husband has caused
her to abort two sets of babies, all of these things
from Jerry's point of view as to his state of mind are
probative and they're relevant to this case and they can
be admitted under the state of mind exception.  They're
not being--they're also not hearsay because I'm not
seeking to introduce the fact that she was pregnant.
I'm not even seeking to introduce the fact that she
cared one wit about this guy 'cause I'm not sure that
she did, but I merely need to introduce his e-mails to
know where he was coming from that would cause him to be
manipulated into killing Bruce Miller.

THE COURT:  Do you wanna respond at all right
now, Mr. Nickola?

MR. NICKOLA:  Well, I--I don't know, I guess I
would.

First of all, Judge, I would argue to the Court
that Mr. Cassaday's state of mind is not issue in this
case, it's my client's state of mind.  It's not his
state of mind.  And--

THE COURT:  Well, when we are focusing on the
statement of an unavailable declarant we are looking at
his state of mind, and in the context of this case in
which there is a theory, as I understand it, based on
the two counts in the Information of a conspiracy be-

1   tween your client and the deceased, Jerry Cassaday, to

2   commit the murder of Bruce Miller, I would suggest that

3   the state of mind of Jerry Cassaday is highly relevant.

4           So go right ahead.

5           MR. NICKOLA:  Well, that--that is the position

6   I'm just placing for the record, Judge, I understand--

7           THE COURT:  Yes, I understand--

8           MR. NICKOLA:  --understand where the Court is

9   at, and I'm responding to what Ms. Mann had indicated,

10  and I would also disagree with her characterization that

11  I--I would have no argument that these e-mails were sub-

12  ject to manipulation because I believe that they are,

13  and also her indication that I would not contend the

14  jury would have no idea that the police would look into

15  his computer being that he is an ex-police officer and a

16  former security advisor to Harrah's Casino and very pro-

17  ficient in computers and had been involved in investiga-

18  tions of crimes himself and made the indication of what

19  the Court has already ruled in the suicide note that he

20  is sending all the information to the police.  So I--I--

21  I'm just for purpose of this record, I--I would contest

22  that characterization.

23          THE COURT:  Well, maybe you all know something

24  I'm not sure about.  My understanding and again I'm bas-

25  ing it on a--my understanding of how computers work

104

1    comes from a case that I have here, <u>United States</u>

2    against <u>James Maxwell</u> and was decided in 1996 here, and

3    I'm trying to see, the cite I have looks like a, Major,

4    from Lexus, if you wanna take a look--

5              THE CLERK:  Yes, under--

6              THE COURT:  I don't know if I can tell you where

7    else it comes from, where did you get that?

8              THE CLERK:  (Indistinct)

9              THE COURT:  It's from a military court but, at

10   anyway, it talks all about AOL and how AOL works, and I

11   thought that perhaps these documents or at least the

12   storage was in Virginia, but I don't know in this case,

13   so I'm a little bit in the dark maybe.

14             MR. NICKOLA:  Actually--

15             THE COURT:  I'm not sure where they--how they

16   were retrieved.

17             MR. NICKOLA:  They were retrieved out of the

18   hard drives, your Honor.

19             THE COURT:  Okay.  Right, there, and not--

20   nothing came out of AOL storage in Virginia then.

21             MR. NICKOLA:  There is documents that at

22   preliminary--

23             MR. PLUMMER:  Well--

24             MR. NICKOLA:  --exam were admitted and that is

25   part of the Motion in Limine, right where we are at

                              105

1    right now, believe the information that we have before

2    us was retracted or extracted I should say out of the

3    hard drives of Jerry Cassaday--

4             THE COURT:  You agree, Ms. Mabry?

5         MR. NICKOLA:  Some from Sharee Miller--

6         THE COURT:  Mr. Plummer, anybody, I don't know?

7         MR. PLUMMER:  Yes, your Honor, what is your

8    question?

9         THE COURT:  Well, this--we are talking now not

10   instant message, the e-mails--

11        MR. PLUMMER:  Yes--

12        THE COURT:  --the package of e-mails we are

13   talking about, these were retrieved--they weren't stored

14   in Virginia.

15        MR. PLUMMER:  No.

16        THE COURT:  These were stored on the hard drive

17   of Cassaday, is that what you're telling me--

18        MR. PLUMMER:  Jerry Cassaday, that's correct--

19        THE COURT:  And either they were retrieved from

20   the actual hard drive there in his apartment or whatever

21   it was, his room anyway, or from some disks that may

22   have been in the briefcase 'cause I never did--

23        MR. PLUMMER:  Your Honor, as I understand the--

24        THE COURT:  --know quite know what's in the

25   briefcase, so I didn't know--

                              106

1    MR. PLUMMER:  The e--the e-mails themselves, it

2    is my understanding, came off of his hard drive of his

3    computer.  There were a couple of photos that were al-

4    leged to be image of the defendant with what appeared to

5    be bruises, etc., that came off a disk, that's a little

6    different than what we are talking about in the court-

7    room right today, but no these were not--

8    THE COURT:  Okay.  So we are not talking about

9    anything retrieved from AOL storage facility in

10   Virginia.

11   MR. PLUMMER:  No, your Honor, and I think what

12   counsel for defense tried to offer to the Court was,

13   when you said that we're not talking anything from AOL,

14   there will--we will be offering testimony from a person

15   named Don Colcolough from AOL to discuss the records

16   they kept about these two accounts.

17   THE COURT:  Right, the account records--

18   MR. PLUMMER:  Yeah, right--

19   THE COURT:  --I understand--

20   MR. PLUMMER:  --but not the e-mail records.

21   THE COURT:  Not the content.

22   MR. PLUMMER:  That's correct.

23   THE COURT:  Okay.  Thanks for helping me because

24   I just know from the--and I wasn't sure how this ex-

25   actly, this set of documents got created.

107

1    All right.  So you know now, Ms. Mabry, in any

2    event, he is not agreeing that they're not, quote, tam-

3    pered with, end quote.

4         MR. NICKOLA:  Right, your Honor, that is cor-

5    rect.  I believe as a matter of fact when documents are

6    downloaded onto computers or saved on the computer they

7    are absolutely subject to manipulation.

8         So anyway, getting back to my point I wanted to

9    make sure--

10        THE COURT:  Okay, I'm sorry to interrupt you,

11   but I have know, I don't know everything you all know in

12   the case.

13        MS. MABRY:  Well, he--he is gonna say I believe

14   that the instant message that you just previously ruled

15   on was altered by the deceased, Jerry Cassaday.  My the-

16   ory is, so did he alter the instant message, did he al-

17   ter all these hundreds of e-mails that were left on his

18   hard drive also that talk about--that lead up to this

19   killing?

20        MR. NICKOLA:  It would be nice--

21        MS. MABRY:  I don't think so.

22        MR. NICKOLA:  It would be a nice question to ask

23   in cross-examination if I could.

24        MS. MABRY:  It--and--

25        MR. NICKOLA:  But I don't--I don't have that

1   opportunity.

2        MS. MABRY:  And he will be able to do that with

3   Mr. Colcolough just as he did with the instant message,

4   and we are actually at a disadvantage because if we had

5   Jerry Cassaday here I think we would be a lot better

6   off.

7        MR. NICKOLA:  Well, I--

8        THE COURT:  The situation in any event has not

9   presented itself so we'll deal with what is before the

10  Court.

11       All right, here we are, we are discussing the

12  instant, I'm sorry, the e-mails that are potentially be-

13  ing offered in the case, a packet of which has been re-

14  ceived by the Court starting with August 28, '99.

15  Sorry.

16       MR. NICKOLA:  Thank you, Judge.

17       Judge, I'm--I'm just placing my objections as it

18  relates to it, and my objections are very similar to the

19  objections I had before because I believe the prosecutor

20  is offering them really in--in the same exceptions that

21  they have offered in the past and I have already, many

22  of these such as the catch-all exception or the state of

23  mind exception I briefed and I would adopt the arguments

24  that I have, you know, preserved for this record and the

25  cases that indicate that.  I think that to go back

109

1   through the analysis would be redundant, but I--I do

2   believe that in these particular e-mails in and of them-

3   selves as it relates to their contention that it has to

4   do with his state of mind, I don't believe that the e-

5   mails are talking about a state of mind.  The, I mean,

6   you can make an argument, but he is not specifically

7   discussing his state of mind.  There is a lot of--lot of

8   ramblings on and on about every little thing that hap-

9   pens in life and, I mean, there is over a hundred docu-

10  ments that at least I'm aware of--not aware of what they

11  have decided now that they pared down from what's before

12  the Court right now, but apparently there is some more

13  have been pared down, but I would simply argue that un-

14  less he's specifically talking about a state of mind and

15  that's--that's not applicable in this case, as it re-

16  lates to 803 or 804(b)(3), as it relates to his against

17  his penal interest if that is what they're arguing which

18  I think they are, I don't think that there is any incul-

19  patory statements in any of the e-mails.  I don't think

20  they are talking ever in the e-mails about any particu-

21  lar criminal act that he is gonna commit as it relates

22  to what the qualifications are pursuant to what we have

23  already argued about, the catchall exception, there has

24  got to be an indicia of reliability.  As we have gone

25  through already with the Court, if there--to--these

1    documents are being entered to prove the truth of the

2    matter asserted.  It's easy to stand here and say I'm

3    not trying to prove that she got pregnant or not, but I

4    think that the argument just before our break was, as a

5    part of the master scheme here she said she was pregnant

6    and our arguing photographs and the Court has reviewed

7    the photographs, and to say that that's not being used

8    to prove the truth of the matter asserted it's just say-

9    ing it, it has no meaning based upon what the--the real

10   intent here is and I think--

11           THE COURT:  It isn't offered to prove that she

12   was pregnant.

13           MR. NICKOLA:  It's being offered to prove that

14   she--

15           THE COURT:  She wanted him to think she was

16   pregnant, that's all--

17           MR. NICKOLA:  That's correct.

18           THE COURT:  By virtue of what she said or did--

19           MR. NICKOLA:  And--and--

20           THE COURT:  --and what did she say, we can read

21   or listen to it if it's read to us or we can look at

22   what she did and send photos of herself in an apparent

23   pregnant state.

24           MR. NICKOLA:  Well, then is--as the Court has

25   indicated, the state of mind is a relevant issue for the

111

1  trial then it is being proved--offered to prove the--the

2  truth of the matter asserted that his state of mind was

3  manipulated because of these alleged lies that were told

4  to him.  I--that's my--that's the position I believe, to

5  simply to say they're not used to prove the truth of the

6  matter asserted I think is--is incorrect, I think it's

7  being said to--to try and circumvent the--the real issue

8  here in which they are using these.

9          I got some other objections, there are some of

10  these documents that I think have some very graphic

11  sexual--

12          THE COURT:  Well, I thought we just go through

13  them one at a time, I'm starting on the first one as a

14  blanket, we can start with the blanket and then we will

15  take each one and go through it.

16          MR. NICKOLA:  All right.  Well, Judge, that--

17  that encompasses my objection as--at least as it relates

18  to her overall objection.

19          THE COURT:  Looking at August 28, '99, then and

20  being aware again our declarant is unavailable, there

21  are two ways to look at reliability.  One is whether

22  there is a firmly rooted exception to the hearsay rule,

23  and if not, then looking at the totality of the circum-

24  stances, whether or not there are sufficient indicia re-

25  liability to allow admission of the statement.

112

1    And it is very clear to the Court after
2  reviewing the package that there is probably only ap-
3  proximately ten statements that would be offered for the
4  truth of what is asserted.  I'm feeling a little uncom-
5  fortable trying to anticipate the prosecutor's position,
6  but, for example, 8/28, I don't think there is a word on
7  there she wants in for the truth, and certainly the
8  first thing is his state of mind.  He is anticipating
9  the short time until he is going to see Sharee Miller.
10  And I don't think I'm going to analyze them paragraph by
11  paragraph, but the bottom line is he is anticipating
12  this meeting apparently they're going to have and tell-
13  ing her his schedule.
14    So it's an 803(3) situation, state of mind ex-
15  ception to the hearsay rule to the extent there is a
16  statement being made at all which the Court is not sure
17  is even being made.  It isn't offered to prove the truth
18  of anything on the page, but it can come in if you wish
19  as a state of mind exception.
20    There is nothing against penal interest in this
21  document that I can see nor does it relate to any con-
22  spiracy to do an unlawful act.
23    Going to August 29, '99, it's hers to him so
24  that comes in without any further discussion.
25    Eight/twenty-nine/ninety-nine, another document

113

1    is here to her--

2         MR. PLUMMER:  Your Honor, if I--if I--

3         THE COURT:  Yes, Mr. Plummer.

4         MR. PLUMMER:  'Cause these don't jive 100 per-

5    cent, if you could mention perhaps the subject, you

6    know, where it says subject--

7         THE COURT:  I think that they are listed--

8         MR. PLUMMER:  --as well as the date--

9         THE COURT:  --here--

10        MR. PLUMMER:  --then I will be able to follow

11   the Court--

12        THE COURT:  The time is right on it on the list

13   I gave Ms. Mabry and Mr. Nickola.

14        MR. PLUMMER:  But the time isn't on everyone of

15   them--

16        THE COURT:  On this one I just finished it says

17   2:30 colon 16 p.m.

18        MR. PLUMMER:  But, your Honor, what was the one

19   for 8/29?

20        THE COURT:  That's the next one, it doesn't have

21   a time.  There is more than one, there are three on

22   8/29.

23        MR. PLUMMER:  Correct.

24        THE COURT:  Two of them have times, one doesn't.

25        MR. PLUMMER:  And you're on the one that has a

114

1    photo?   Thank you.

2            THE COURT:   Well, I finished that one--

3            MR. PLUMMER:   Says my beauty queen.

4            THE COURT:   --I thought.   I know this one, I

5    have a red flag on it because of the pornographic con-

6    tent which upsets the Court because I just feel this is

7    gonna be something difficult for everybody, mostly I'm

8    worried about the jury.

9            MS. MABRY:   And that would be the one that the

10   subject is, hi, baby, and the one she also--

11           THE COURT:   Just a quick note--

12           MR. PLUMMER:   No, she--

13           THE COURT:   --it starts out, yes.

14           MS. MABRY:   Right, correct.

15           MR. PLUMMER:   Okay.

16           THE COURT:   And it goes on and on and I--

17           MS. MABRY:   Judge, and the reason why this is

18   one of the ones that we feel that we have to keep is

19   that he mentioned that he has the "For Jerry's Eyes

20   Only" tape and that he seen it and that he is watching

21   her tape everyday.   I'm--I'm not anymore excited about

22   the pornographic content, but it just seems to be a part

23   of this case that is inescapable and we're--we're not

24   seeking to introduce it gratuitously, we really believe

25   that there is a reason for it.


                            115

1          THE COURT:  Well, it's all state of mind so
2     there it is, 803(3).
3          Then there is another one 8/29/99 at 6:13:57.
4          MS. MABRY:  Judge, the reason why this is a
5     keeper is, and Jerry, I'm getting those shots so I won't
6     again get pregnant.  I don't want another baby and that
7     needs to be prevented before all is taken out and never
8     able.
9          THE COURT:  Well--
10         MS. MABRY:  In other--in other words, not for
11    the truth--
12         THE COURT:  It's from her--
13         MS. MABRY:  --of the matter asserted--
14         THE COURT:  --anyway, it's hers, so--
15         MS. MABRY:  Right, okay--
16         THE COURT:  --there it comes.
17         (Court conferring with the clerk)
18         I'm sorry, Major, made a suggestion, that one
19    starts out if you want it for the record, real--Re: Hi,
20    baby, that is what Ms. Mabry said, so we're all--okay.
21         The next one is subject, no subject, and it is
22    8/30/99.  It's hers to him, so it comes in.
23         MS. MABRY:  Judge, it's hers, I want that in--
24         THE COURT:  Right, hers.
25         Number, the next one is Re: Hello, baby, of

1   August 31, '99.

2          MS. MABRY:  I don't need that.  Paid my little--

3          THE COURT:  Just state of mind again if you want

4   it all there, it's just love you and miss you and all

5   those syrupy things--

6          MS. MABRY:  Okay.  Judge--

7          THE COURT:  I guess what I can rule and then if

8   you wanna pull--

9          MR. PLUMMER:  Let's--

10         MS. MABRY:  Yes--

11         THE COURT:  --pull them out--

12         MS. MABRY:  Keep them in--

13         THE COURT:  --that's up to you.

14         MS. MABRY:  Okay, okay.

15         THE COURT:  Wanna do it that way?

16         MS. MABRY:  Very good, yes.

17         THE COURT:  Re:  Hello, baby, 8/31, state of

18   mind--

19         MS. MABRY:  Thank you--

20         THE COURT:  --comes in.

21         Subject, Good morning, baby, 8/31/99.

22         MS. MABRY:  State of mind, he talks of the dream

23   of the day we are finally one--

24         THE COURT:  Right.  Here we are state of mind,

25   coming in.

117

1     Then the next one is, quote, Hello, baby, of

2  8/31/99 at 5:24--

3         MS. MABRY:  That is hers--

4         THE COURT:  --from her to him.

5         MS. MABRY:  Yes.

6         THE COURT:  So it's in.

7         Eight/thirty-one/ninety-nine at 7:59.

8         MR. PLUMMER:  Hers.

9         MS. MABRY:  That is also hers.

10        THE COURT:  Hers to him, comes in.

11        MR. PLUMMER:  That's all I got to say.

12        THE COURT:  Next one is, Good morning, baby,

13  9/1/99.

14        MS. MABRY:  Judge, yes, I have them separated

15  according to month, if I can have just a moment?

16        THE COURT:  Okay, go to September now.

17        MS. MABRY:  Okay.  I believe there was my little

18  beauty queen that was in there, too, I--you already ad-

19  mitted that.

20        THE COURT:  Beauty queen?

21        MR. PLUMMER:  That was the one with photos, your

22  Honor, that was from her.

23        THE COURT:  My beauty queen was the one dated

24  August 29, '99, at 2:30.

25        MS. MABRY:  Right.

1    THE COURT:  And I already said that--

2    MS. MABRY:  Okay--

3    THE COURT:  --dealt with that one.  Hers.

4    MR. PLUMMER:  Yes.

5    THE COURT:  If you have your package of Septem-

6    bers there--

7    MS. MABRY:  Yes--

8    MR. PLUMMER:  Yes--

9    THE COURT:  --then we will go to September--

10   MS. MABRY:  Yes, I'm fine.

11   THE COURT:  First one in September, September 1,

12   subject is, Good morning, baby, again we've got our

13   state of mind exception--

14   MS. MABRY:  State of mind--

15   THE COURT:  --anticipating this apparent meeting

16   in seven more days.

17   MS. MABRY:  That's true.

18   THE COURT:  So that will come in.

19   Next one is no subject dated September 3.

20   MS. MABRY:  Judge, we believe it's relevant be-

21   cause it communicates another way to contact him which

22   is in a crap pit but . . .

23   THE COURT:  I don't see any--are you offering

24   any of it for the proof of the truth?  I don't know, see

25   the phone numbers and all that, I have no idea what your

119

1    case entails--

2         MS. MABRY:  Not that that is the true phone num-

3    ber, but just that apparently there were other means of

4    communicating other than through these hundreds of e-

5    mails.  So it's state of mind that--that their relation-

6    ship was very involved, that the e-mails were just the

7    tip of the iceberg.

8         THE COURT:  Basically, it is just corroborative

9    of the relationship which is involving communication not

10   only through e-mail, but through telephone.

11        The Court believes this matter would be admissi-

12   ble as an exception to the hearsay rule.  Looking at the

13   Poole criteria, certainly voluntarily given, contempora-

14   neous with going to work, to someone to whom he would

15   speak the truth and obviously uttered spontaneous, so

16   that's 9/3.

17        Then 9/3, it says, Hello, on the top at 8:19.

18        MS. MABRY:  That would be hers.

19        THE COURT:  Hers to him, and it's one, two,

20   three, four, five pages--

21        MS. MABRY:  Correct--

22        THE COURT:  --comes in.

23        Next one is no subject dated, September 4, '99,

24   from her again to him at--

25        MS. MABRY:  Correct--

120

1    THE COURT:   --at 6:33, admitted as 801(d)(2).

2    Next one is Re:  My baby fell asleep, 9/5/99 at

3    6:48.

4    MS. MABRY:   That's hers.

5    THE COURT:   Hers to him, admitted.

6    Hello, honey, is next at 9/5/99, 7:19, hers to

7    him, admitted.

8    Next is, Good morning, love, at 9/6/99, 6:43,

9    hers to him--

10    MS. MABRY:   Again state of mind, Judge--

11    THE COURT:   It's hers to him--

12    MS. MABRY:   July 17th was the day my life began.

13    THE COURT:   Hers to him.

14    MS. MABRY:   Oh, I'm sorry, Good morning, my

15    love.

16    THE COURT:   Good morning, love--

17    MS. MABRY:   Sharee, my love, another sleepless

18    day.

19    THE COURT:   No, that's not the one I'm on--

20    MS. MABRY:   Oh, I got the wrong one.

21    THE COURT:   I'm on the one before that.

22    MS. MABRY:   There's two good morning my love's?

23    THE COURT:   This is, Good morning, love, 9/6/99,

24    6:43--

25    MR. PLUMMER:   No, here.

121

1    MS. MABRY:  Oh, Okay--

2    MR. PLUMMER:  Jerry--

3    THE COURT:  From Sharee.

4    MS. MABRY:  I--I'm on the--

5    MR. PLUMMER:  --your letters are very beautiful?

6    THE COURT:  Yes.

7    MS. MABRY:  Are so very--

8    MR. PLUMMER:  Yeah.

9    THE COURT:  That's hers to him.

10   MS. MABRY:  That's hers, correct, thank you.

11   THE COURT:  Here we go, now let's see here just

12   a minute.

13        The next one is, Good morning, my love, 9/6/99.

14        MS. MABRY:  And that's the one I'm saying is

15   state of mind.  Talks about the beginning of the

16   relationship--

17        THE COURT:  State of mind about what a wonderful

18   thing now that they've met.  The sleepless nights, ad-

19   mitted, state of mind.

20        The next one is, Hello, 9/6/99, at 4:13.

21        MS. MABRY:  That's hers--

22        THE COURT:  Hers, comes in.

23        The next one is subject, Julie, 9/6/99, 9:16.

24        MS. MABRY:  Judge--

25        THE COURT:  I don't know what this is--

122

1    MS. MABRY:   --that--that's not--

2    THE COURT:   --or who it is or anything--

3    MS. MABRY:   --relevant--

4    THE COURT:   --so clarify it for me.

5    MS. MABRY:   This is the sister, or I'm sorry,

6    the daughter of the deceased, this is Bruce Miller's

7    daughter Julie.

8    THE COURT:   Is this some relation to this case,

9    this one, for any reason whatsoever?

10   MS. MABRY:   Other than they were exchanging in-

11   formation about their families and--but it can be taken

12   out, Judge.

13   THE COURT:   I don't, Mr. Nickola, unless you

14   were interested, I don't know what role this person

15   plays or why picture has anything to do with this case,

16   I'm taking it out--

17   MR. NICKOLA:   Well, it--it--

18   MS. MABRY:   That's fine--

19   MR. NICKOLA:   --Judge, it--it--if they wanna

20   withdraw their offer I'm not--I'm not--

21   THE COURT:   You wanna--

22   MR. NICKOLA:   --precluding my offer.

23   THE COURT:   If you have any you want in believe

24   me, let me know, but that one is out.

25   MS. MABRY:   Out, okay--

123

1    THE COURT:  Subject, Julie, is out.

2    Now, we have one date--stated, no subject,

3    9/6/99 at 9:22:52, and this just appears to be, is it,

4    the photographs, we have a series of photographs and I

5    think--

6    MS. MABRY:  It's from her--

7    THE COURT:  --I have indicated here--

8    MR. PLUMMER:  Your Honor, are you able to see

9    the depiction in your copy?

10   THE COURT:  Well, two of 'em are pretty good,

11   not bad, but the last one is really bad, really bad--

12   MS. MABRY:  Okay.

13   THE COURT:  I guess they are all the same,

14   9/6/99 at 9:28, there is another one.  They kind of go

15   together, they are a series of photos.

16   MR. PLUMMER:  Your Honor, I'd like to give the

17   Court bailiff about a dozen pages that I think are next

18   in sequence so the Court could just kind of look at it

19   compared to the ones that has some notes with some pic-

20   tures on it.  I'd ask the Court if they could stay in

21   order--

22   THE COURT:  Yes, I had them marked, one, two,

23   three, four.

24   MR. PLUMMER:  Yeah, some of those were discussed

25   earlier.

124

1       THE COURT:  Well, there is different things

2   depicted, of course, the first four that I had a sticky

3   on seem to be what I think Mr. Nickola calls porno-

4   graphic poses.

5       MR. NICKOLA:  Correct.

6       THE COURT:  Am I right?

7       MR. NICKOLA:  Yes, your Honor.

8       THE COURT:  The other ones are just pictures.

9       MR. NICKOLA:  Correct.

10      THE COURT:  And the People wish to move into

11  evidence at trial all of them, not only the four, but

12  the whole set, is that correct--

13      MR. NICKOLA:  That's correct.

14      THE COURT:  And your offer of proof as to proba-

15  tive value or relevance or?

16      MR. PLUMMER:  Now, I need them back so I can see

17  what we are talking about.

18      THE COURT:  Right, there you go, thanks.

19      (Counsel conferring with counsel)

20      MS. MABRY:  Judge, there are three, four, five,

21  six, seven, eight, nine, nine photographs at the very

22  end that we do not want to introduce that are pictures

23  of Sharee Miller in her younger days or with people that

24  are not identified.  We simply want the first four pho-

25  tographs in.

125

1     THE COURT:   The four that have the stickies that

2   are what--

3     MS. MABRY:   Yes, yes--

4     THE COURT:   --Mr. Nickola has deemed porno-

5   graphic and at least they are provocative if not

6   pornographic.

7     Now, you're moving--you would like to have all

8   of them in, is that correct?

9     MS. MABRY:   That's correct, those were sent by

10   Sharee Miller to Bruce--Jerry Cassaday.

11     THE COURT:   And just for the record, your proba-

12   tive value, relevance argument is?

13     MS. MABRY:   Is to show the intensity of the re-

14   lationship which would cause Jerry Cassaday to kill

15   Bruce Miller and in fact an element of our crime is that

16   we have to show that Jerry Cassaday did in fact kill

17   Bruce Miller.

18     THE COURT:   Anything further, Mr. Nickola?

19     MR. NICKOLA:   I have already objected to these,

20   Judge, and just for the record I'm not responding before

21   the Court rules--

22     THE COURT:   Yes, I know, I just wanna have you

23   if you wanna say--

24     MR. NICKOLA:   I have already objected--

25     THE COURT:   --anything, feel free to say it--

126

1          MR. NICKOLA:  --in total.

2          THE COURT:  And these don't appear to be dupli-

3     cates of anything that we have discussed today and there

4     is probative value and relevance regarding the defen-

5     dant's motivation in her plan and scheme, I suggest, and

6     they are admitted or will be admitted.

7          MR. PLUMMER:  Those are the four we just--

8          THE COURT:  Those four with the stickies down

9     the side, one through four.

10         Next, subject is, Hello, at 9/6/99, 6:31.

11         MR. PLUMMER:  Is this a written document, your

12    Honor, or a photo?

13         THE COURT:  No, we are back to writing now.  We

14    --I--at least mine stopped and there is a--a writing at

15    9:30 or 6:31.

16         This is another one of these pornographic--

17         MR. PLUMMER:  She is talking about this one.

18         THE COURT:  At least partly.

19         MR. PLUMMER:  Is that the one that has list, I

20    can't wait--

21         THE COURT:  Yes, I can't wait and PS all over

22    it.

23         MS. MABRY:  Judge, that is from her to him and

24    we believe that would be admissible.

25         MR. NICKOLA:  Judge, just, I guess I better say

127

1   something here as far as this record is concerned.

2         Obviously, pursuant to their foundation, if they

3   are gonna be able to establish that this is my client

4   that is sending them because--

5         THE COURT:  That's--the person that is--

6         MR. NICKOLA:  --we haven't been using--

7         THE COURT:  --depicted here is Jerry's

8   pool(sic)--

9         MR. NICKOLA:  Yes--

10         THE COURT:  --is hooked up to your client some-

11   how her AOL account in Mt. Morris or whatever it is.

12         MR. NICKOLA:  Right, there is a--there is a--

13   there--

14         THE COURT:  A foundation will be laid at trial

15   before any of them will come in, and--

16         MR. NICKOLA:  All right, 'cause that--

17         THE COURT:  --we all agree, right, Ms. Mabry and

18   Mr. Plummer--

19         MS. MABRY:  Yes.

20         MR. PLUMMER:  Yes, your Honor.

21         MR. NICKOLA:  Just making sure because we keep

22   using the term it's hers, but there are other people who

23   have access to that screen name, so I'm just wanna make

24   the clarification, Judge.

25         THE COURT:  But that will go to weight rather

1    than admissibility.

2         MR. PLUMMER:  Thank you, your Honor.

3         THE COURT:  Now, there is a next one that is

4    called, no subject, 9/6/99 at 9:32, and it's another

5    photo again.  Now, are you--there is actually a series

6    of photos here, and are you offering all of these or are

7    you saying those are the ones you're withdrawing, Ms.

8    Mabry?

9         MS. MABRY:  I withdrew nine photographs at, I

10   believe those must be the ones 'cause--

11        THE COURT:  Dance costume and the whole thing,

12   those are coming out.  Graduating--

13        MR. PLUMMER:  Yeah, they appear to all be 9/6 of

14   '99 between 9:32--

15        THE COURT:  Right--

16        MR. PLUMMER:  --p.m. Pacific Daylight Time--

17        THE COURT:  And 9 or--

18        MR. PLUMMER:  --through 10:12:18 Pacific Day-

19   light time, all on 9/6 of '99--

20        THE COURT:  Well, the last one I have is

21   10:10:47, but anyway, unless you want any of those pho-

22   tos, Mr. Nickola, those are gone.

23        MR. PLUMMER:  Correct, your Honor.

24        MR. NICKOLA:  Well, Judge, I guess when the

25   Court says if--if I want 'em or not--

1   THE COURT:  Well, sometimes they could be some

2   evidence you want in, I don't know.

3   MR. NICKOLA:  Well, did--that's true, but I'm--

4   I'm not here on a Motion in Limine to put my evidence

5   forward, they are.  I'm--I'm just--if they wanna with-

6   draw it then I just wanna make sure for the record that

7   because they withdraw it and I don't object that doesn't

8   preclude me somewhere down the road is all.

9   THE COURT:  Well, down the road, I'm gonna sug-

10  gest if there is issues I wanna deal with them today,

11  please, everybody, not some other time because there

12  isn't any other time.

13  MR. NICKOLA:  Well, I--I understand that, your

14  Honor, but--

15  THE COURT:  So they're out, anyway they're out,

16  all of these photos.

17  MR. NICKOLA:  Judge, if I--if I could just--I

18  wanna make--make sure the record is clear so that--I un-

19  derstand where the Court is coming from and this is the

20  day we have set aside to deal with my Motion in Limine

21  to seek out evidence; their Motion in Limine which they

22  wanna get their evidence in, but I wanna make sure that

23  what the Court is indicating, that this record is very

24  clear, I don't have a Motion in Limine to introduce evi-

25  dence that I may put in the case--

130

1        THE COURT:   You have a Motion in Limine to keep

2   it out, she brought one which I've never really seen to

3   get it in, but--

4        MR. NICKOLA:   Right--

5        THE COURT:   --it's--it's good in my view because

6   we will have it all cleared up today.

7        MR. NICKOLA:   I understand that.   I just wanna

8   make sure the record is clear because--

9        THE COURT:   But if you have some I wish you

10   would have told us 'cause we could have gone through

11   yours today also, that's all I'm saying.

12        MR. NICKOLA:   Well, I--I--I do have some, but I

13   don't have them piled up here for the Court to look at,

14   but I'm sure that they will all fall in with the same

15   line of rulings that the Court has done up to this

16   point, but I just wanted to make sure the record was

17   clear.

18        THE COURT:   Next is subject, Hi, honey, 9/7/99.

19        MS. MABRY:   That is Mr. Cassaday's and it again

20   talks about wanting to be together and that she is gonna

21   be meeting his son and we believe that is an important

22   state of mind.

23        THE COURT:   State of mind, comes in, 9/7, Hi,

24   honey.

25        Next one is, Good morning, lover, 9/7.

131

1     MS. MABRY:  Again from Mr. Cassaday and they're

2     not going to be together for a few days, but for eter-

3     nity and we're--

4            THE COURT:  State of mind, it comes in.

5            Next is no subject of 9/19, and it's hers to

6     him, so it comes in.

7            MS. MABRY:  Yes.

8            THE COURT:  Next one is no subject at 9/19.

9            MS. MABRY:  Again hers to him.

10           THE COURT:  Comes in.  It's two pages on this

11    one.

12           Next subject is, Hello, again, 9/19/99 at 4:28.

13           MS. MABRY:  That's hers--

14           THE COURT:  Hers to him, comes in.

15           MR. PLUMMER:  Your Honor, if I could have a just

16    a second, I'm trying to sort the originals as you're go-

17    ing through and I--I don't find that one.  Oh, it's

18    nothing--

19           MS. MABRY:  This one.

20           MR. PLUMMER:  Oh, I got that one.  I just had

21    that one, and she did this one.

22           MS. MABRY:  These two.

23           MR. PLUMMER:  See I don't see that.

24           MS. MABRY:  It's right--it's right here.

25           MR. PLUMMER:  Oh--

132

1        And the one the Court is on, your Honor?

2        THE COURT:  Hello, again, 9/19/99 at 4:28.

3        MR. PLUMMER:  Where does it say, Hello, again?

4        THE COURT:  Hers to him.

5        MR. PLUMMER:  Okay.

6        MS. MABRY:  We got it.

7        MR. PLUMMER:  Thank you, your Honor--

8        THE COURT:  Are we all up to date, so we are all

9    on the same page?

10       MR. PLUMMER:  Yup.

11       THE COURT:  Next is subject matter, Hey, baby,

12   9/20, hers to him.

13       MR. PLUMMER:  Correct.

14       MS. MABRY:  Correct.

15       THE COURT:  It's a 6:29, '99, I'm sorry, 6:29

16   p.m.

17       MS. MABRY:  Yes.

18       THE COURT:  The next one is called subject, Not

19   home yet, on 9:20, 8:49 at the top.

20       MS. MABRY:  That's hers to him, correct.

21       THE COURT:  Hers to him coming in.

22       MR. PLUMMER:  Your Honor, if I could just have

23   one moment, there is one that I think that somehow I

24   just had them in a different order.  There was one I be-

25   lieve you have already admitted for being hers on

133

1    9/19/99 at 10:03:59 from, Not knowing hurts to Sharee's

2    pool--

3              THE COURT:  Yes, yes.

4              MR. PLUMMER:  You have already ruled on that?

5              THE COURT:  Yes.

6              MR. PLUMMER:  Thank you.

7              THE COURT:  All right, now, we're up to, Hi,

8    honey, on 9/21/99.

9              MS. MABRY:  That is his to Sharee, again the

10   state of mind, I know you're trying to get things--

11             THE COURT:  It's a two-page state of mind.

12             MS. MABRY:  Right.  And it talks about marriage.

13             THE COURT:  So that will be admitted and I have

14   already discussed the rulings, the basis for the ruling.

15             Now, we have the next one, Hi, sexy, that's on

16   9/21/99.

17             MS. MABRY:  That's his to her.

18             THE COURT:  It's still state of mind, there is

19   nothing that could ever compare with you, no one, etc.

20             MS. MABRY:  Right.

21             MR. PLUMMER:  Correct.

22             THE COURT:  How much I miss you.

23             Next one subject matter, Sorry, 9/21/99 at 4--

24   4:51.

25             MS. MABRY:  That's hers.

134

1       THE COURT:   That one comes in.

2           The next is no subject of 9/23/99, hers to him,

3   it comes in.

4           The next is no subject 9/23/99 at 4:27, hers to

5   him.

6           MR. PLUMMER:   Did you say 4:27, your Honor?

7           MS. MABRY:   And the other was 7:44?

8           THE COURT:   Yes.

9           MR. PLUMMER:   Thank you.

10          THE COURT:   The next one is, Not bad, please

11  read subject, and then the date is 9/23/99 at 10:43,

12  hers to him.

13          MR. PLUMMER:   Correct.

14          MS. MABRY:   That's correct.

15          THE COURT:   Coming in.

16          The next subject, Hello, my angel, 9/23/99.

17          MS. MABRY:   It's his to her after hearing you

18  tell me how much you love and assured me that it won't

19  be much longer until you're in my arms.   I dream of the

20  day that we become one forever, state of mind.

21          THE COURT:   State of mind, coming in, 9/23.

22          The next one is subject, I love you, 9/24/99.

23          MS. MABRY:   That is from him to her, and he is

24  expressing deepest his regrets for what she has been

25  through and it was all for him, and the things she told

1    him ripped him in half, and that is definitely relevant

2    as to state of mind.  It says, Honey, I hate that man,

3    he will pay.

4         THE COURT:  This is state of mind, and then this

5    is where we first get into an area where there is a pos-

6    sible 804(b)(2), I'm sorry, (B)(3), I'm sorry, statement

7    against interest because he is stating I hate that man,

8    he will pay, no one, I mean, no one is gonna get away

9    with the things he has done to you, I assure you of

10   that, I assure you Jerry will take care of that.

11        So that particular state of mind as well as

12   statement against penal interest.

13        Now, we are going to no subject on 9/24/99 at

14   7:25.

15        MS. MABRY:  That's hers, Judge--

16        THE COURT:  Hers to him, it's two pages coming

17   in.

18        Now, the next one says, Look for Sharee under

19   this name.

20        MS. MABRY:  It's from her to him which she has

21   numerous names--

22        THE COURT:  Her to him--

23        MS. MABRY:  --get out while you can is what she

24   is using in this particular e-mail.  They will hear

25   from--

136

1          THE COURT:   That will come in, hers to him, all

2     right.

3          THE COURT:   Nine/twenty five, Hi, baby, 9/25/99.

4          MS. MABRY:   That is his to her, it's relevant

5     because he states, now I know after the things you told

6     me it has all has come clear to me now, once you finally

7     told me the truth and all of it, it all makes so much

8     sense now.   He matched us together to help each other.

9          MR. PLUMMER:   State of mind.

10         MS. MABRY:   It's a state of mind.   In other

11    words, she is being abused and he is gonna save her.

12         THE COURT:   I need you and I have to have you,

13    etc., 9/25/99, Hi, baby comes in, statement against in-

14    terest, state of mind.

15         The subject is no subject, it's 9/25/99 at 4:30.

16         MS. MABRY:   Judge, that is from--

17         THE COURT:   This is one I wanted to have some-

18    body clear up, who is BD Junk?

19         MS. MABRY:   BD Junk is a name that was, and

20    I'll--actually maybe should defer to Mr. Plummer on this

21    one.

22         MR. PLUMMER:   Your Honor, that is one of the

23    screen names listed under the account of Sharee Miller.

24         MS. MABRY:   We believe she uses this name in fu-

25    ture e-mails to make--

137

1     THE COURT:  There are more I know with that

2   name--

3     MS. MABRY:  --Jerry think that he is hearing

4   from her husband when he taunts--she is making him think

5   that her husband is taunting him about killing his

6   babies.

7     MR. PLUMMER:  Your Honor, this one it isn't

8   nearly as clear, do you have any reason to have this

9   one?

10     MS. MABRY:  No.

11     MR. PLUMMER:  Your Honor, I'd ask the Court sim-

12   ply exclude this one and we will reserve our arguments

13   about BD Junk, I think it will be a little more obvious

14   in some of the future ones.

15     THE COURT:  So we are just going to pull this

16   out, right--

17     MR. PLUMMER:  Yes.

18     THE COURT:  Let me strike it then from my list,

19   please.

20     The next one is subject, I think I may have come

21   up with something here and this--

22     MS. MABRY:  That is from him to her and he is, I

23   know you hate hearing this, but don't immediately think

24   I'm thinking the wrong thing, but there are options.  We

25   will make sure you and your kids are happy, safe, secure

138

```
 1     and protected.  I know you want him to hurt.  I know you
 2     want revenge for everything he has done, I know this,
 3     but there are more ways to hurt someone than physical
 4     pain.  State--it's a statement against interest.  It
 5     continues on, you know that, you're a living proof of
 6     that, together we can beat him at his own game.  If
 7     that's the rules he wants to set then he best be ready
 8     to live by them.  And a statement of a co-conspirator.
 9              THE COURT:  We have some issue, parts of it that
10     are clearly state of mind and certain parts are obvi-
11     ously statements against penal interest or at least
12     would certainly be useful in a criminal prosecution for
13     murder were he here to be prosecuted.  And then a lot of
14     it isn't hearsay at all.  So it's admitted for those
15     reasons.
16              Next is called no subject 9/26/99, 8:03.
17              MR. PLUMMER:  Her.
18              MS. MABRY:  That is her, Judge.
19              THE COURT:  That comes in.
20              MS. MABRY:  And--
21              THE COURT:  The next is, Hello, lover, 9/26/99.
22              MS. MABRY:  That is him to her, it talks--talks
23     about being one with her forever, and he also says, I
24     never ever forget how that worthless piece of shit has
25     killed our baby.  How he has stolen a life that God gave
```

139

1    to you and me, stolen all the joys and happiness of our

2    future together with our baby.  And then he ends with,

3    we will talk more about it later.

4         It's a dual statement against interest as well

5    as his state of mind.

6         THE COURT:  Right.  We have a serious indication

7    here, we will get him where we want him and then bam.

8    So we have a partial state of mind and statement against

9    interest, this one will come in for those reasons.

10        Next is, Why, 9/27/99.

11        MS. MABRY:  That is his to her, and toward the

12   end of the page he tell her, you tell me you're gonna

13   kill him, you hate it so bad you're willing to take that

14   risk, that you owe it to your kids, you don't care what

15   the risks are.

16        Again, statement of co-conspirator, state of

17   mind.

18        THE COURT:  The Court will permit this under the

19   statement against interest obviously, and state of mind,

20   both exceptions apply.

21        Next, I guess it goes over to the top of the

22   next page, is that how you have it there--

23        MR. PLUMMER:  Yes, your Honor--

24        THE COURT:  --or is this separate--

25        MR. PLUMMER:  --there is a short second page.

140

1        THE COURT:  A little sentence on the top of the

2    next page, all right.

3        Then the next is no subject 9/27/99 at 1:37.

4        MS. MABRY:  Nine/twenty-seven, I have it 10:26

5    next.

6        One thirty-seven is from him, no, wait a minute,

7    I'm--

8        MR. PLUMMER:  It's hers.

9        MS. MABRY:  I'm sorry I have that wrong.

10       That's from her.

11       THE COURT:  It's big print so you know it's the

12    same one--

13       MR. PLUMMER:  Yes--

14       MS. MABRY:  Right, that's from her.

15       THE COURT:  Coming in.

16       MS. MABRY:  The fact . . .

17       THE COURT:  The next is called no subject

18    9/27/99 at 1:56.

19       MS. MABRY:  That is also from her.

20       THE COURT:  Coming in then.

21       Moving now to no subject, 9/27/99 at 2:49.

22       MS. MABRY:  That's from her--

23       THE COURT:  Hers to him, coming in at 2:49.

24       The next no subject, 9/27 at 10:26, hers to him

25    coming in.

141

1        The next is no subject, 9/28 at 8:59.

2        MS. MABRY:   That's--

3        THE COURT:   Hers--

4        MS. MABRY:   --hers--

5        THE COURT:   --to him, two pages.

6        MS. MABRY:   That is it for September, Judge, if

7 I could--

8        THE COURT:   Yes, that's--

9        MS. MABRY:   --get my next packet--

10       THE COURT:   --the conclusion of September.

11      We are ready for October, my first one says, Re:

12 Phone number, 10/3/99, is that what you have for the

13 first one for October everybody--

14       MS. MABRY:   Yes, that is true.

15       THE COURT:   And nothing on it gives me, I can't

16 even make anything out of that one, so.

17       MS. MABRY:   Judge, we could get something out of

18 it, but simply suffice if I just tell you that we are

19 moving to exclude this.

20       THE COURT:   Take out, all right.

21       So the next one--

22       MR. PLUMMER:   Your Honor, if I could have just

23 one second, please?

24       MS. MABRY:   Okay, sorry.

25       (Counsel conferring with counsel)

1              Judge . . .

2              (Counsel conferring with counsel)

3              Judge, I believe that there is going to be tes-

4       timony from the AOL representative that the Bike Man for

5       you which is where this transmission originates from is

6       registered to Jerry Cassaday and in fact that Jerry Cas-

7       saday is sending his son an e-mail which the content of

8       the e-mail is, you can reach me at a hotel in the Flint

9       area, that's the--a Flint area hotel which would again

10      place the--Jerry Cassaday in Flint.  It would be a

11      statement against interest and part of the conspiracy

12      also.

13             So whatever CKS523 is, you're telling me that's

14      back to his home?

15             MR. PLUMMER:  If I can have one second, your

16      Honor?

17             THE COURT:  (No verbal response)

18             MR. PLUMMER:  Your Honor, given the quantity

19      that we are going through, perhaps we could just ask the

20      Court not to consider this one at this time, but if at

21      some later period we feel it's important we ask to re-

22      serve the right to argue about it at that point.  We

23      haven't asked you to do that very often--

24             THE COURT:  Well, just put a big question mark

25      on it then?


                            143

1          MS. MABRY:  Okay.

2          THE COURT:  I'll just put a big question mark on

3     it then.

4          Now, let's see.  All right, then I have in my

5     pack the next one, subject, Hi, honey, 10/20/99 from

6     her, is that where everyone else is?

7          MS. MABRY:  That's correct.

8          THE COURT:  So that's at 11:12 coming in.

9          MS. MABRY:  Okay.

10         THE COURT:  Then the subject is, It has been an-

11    other hour, 11/20/99(sic) at 12:38.

12         MS. MABRY:  That's from her--

13         THE COURT:  That's hers to him, coming in.

14         The next says, no subject, 10/20/99, hers to

15    him.

16         MS. MABRY:  At 3:34?

17         THE COURT:  Yes, 3:34:34 coming in.

18         Then we have Re:  It has been another hour,

19    10/20/99.

20         MS. MABRY:  That is from--

21         THE COURT:  Him to her--

22         MS. MABRY:  --him to her, and that is the state

23    of mind.

24         THE COURT:  Well, the other thing on it is sig-

25    nificant is there a phone number which may be important

1    later, but in any event, state of mind and a phone

2    number.

3         I assume, just can I--maybe I could ask you.  Do

4    you think he is referring--who was--to whom he is refer-

5    ring in this e-mail, does anyone know, we had a great

6    talk, he is such a great guy?

7         MS. MABRY:  He may have gone to see a

8    psychiatrist.

9         THE COURT:  Counselor of some type perhaps?

10        MS. MABRY:  Or his AA sponsor 'cause there is

11   references in the e-mails to he is cleaning up his act,

12   he is getting his life together and she says, hey,

13   that's great you're gettin' your life together, mine is

14   falling apart.

15        MR. NICKOLA:  I'm not sure which--which one she

16   is referencing, Judge.

17        MS. MABRY:  Just the general tenor of these,

18   that's how it fits into--

19        THE COURT:  Well, I'm on--

20        MS. MABRY:  --the big picture.

21        THE COURT:  I only wanna deal with this one, but

22   I just thought perhaps that first paragraph should just

23   be taken off, out, because the he, whoever he is I have

24   no idea who he is and--

25        MR. PLUMMER:  Your--

145

1       MS. MABRY:  I--I believe taken in the context of

2   the other e-mails that he is talking about getting his

3   life together and AA and . . .

4       THE COURT:  Well, is it relevant or probative of

5   anything, the first paragraph only I'm speaking of?

6       MS. MABRY:  Judge, if you feel it is marginal,

7   we'll take it out.

8       THE COURT:  Okay.  Let's just strike the first

9   paragraph of the one it has been another hour out.

10      MR. PLUMMER:  Excuse me, your Honor.

11      THE COURT:  The first paragraph is stricken on

12  Re:  It has been another hour.

13      MR. PLUMMER:  Your Honor, we are asking to with

14  --we'll--we will just remove that one--

15      MS. MABRY:  Withdraw the whole one--

16      MR. PLUMMER:  --and reserve our right--

17      THE COURT:  Oh, you're gonna take the whole one

18  out?

19      MR. NICKOLA:  Yes.

20      MR. PLUMMER:  Right.  Reserve the right to argue

21  it if we wanna bring it in for its truth.

22      THE COURT:  Reserve the right to argue it if you

23  want to for its truth?

24      MR. PLUMMER:  Well, your Honor, I have the same

25  question in my mind about who he is--

146

1          THE COURT:  Okay--

2          MR. PLUMMER:  --and I--so I can't really answer

3     that today, but if that had somehow become significant

4     and we needed to try to get this in for the truth of the

5     matters asserted in the statement, then we would just

6     like to reserve the ability to come to you and say, your

7     Honor, on this one we thought we weren't gonna need, we

8     now believe that there is a basis for it, here is our

9     argument and ask you to rule on it then.

10         THE COURT:  All right, today it's out in any--

11         MR. PLUMMER:  Today is it out, your Honor.

12         THE COURT:  All right.  Now, next one, no sub-

13    ject, 10/20/99, 5:55.

14         MS. MABRY:  Five fifty-two?

15         THE COURT:  Yes, 5:52.

16         MS. MABRY:  That was from her to him.

17         THE COURT:  Coming in then.

18         Let's see, next is no subject, it's a photo,

19    10/20/99

20         MS. MABRY:  That--

21         MR. PLUMMER:  Whoops--

22         THE COURT:  --9:09.

23         MS. MABRY:  Nine-o-nine fifty-six?

24         THE COURT:  Yes.

25         MS. MABRY:  That would be of the EPT test.


                              147

1        THE COURT:  See those things, I can't read these

2    either very well, so I'm sure you have better pictures.

3    Are you offering, again there is four or five that look

4    kind of like something?

5        MS. MABRY:  That's correct.

6        THE COURT:  Seven, eight, nine.

7        MS. MABRY:  Judge, I do have seven of similar

8    photographs of her showing Jerry Cassaday or EPT test--

9        THE COURT:  Whatever it is I can't make it out,

10   but in any event, are you asking to put all of these in?

11       THE COURT:  At this juncture, Judge, but again

12   we will go through 'em and weed through some of them.

13       THE COURT:  Cumulative, it's clearly cumulative,

14   but I think we should just pick out one today or two of

15   them if that is what you what.  I can't make anything

16   out of what they are suppose to be for.

17       MS. MABRY:  Well, she is showing him that I took

18   a--one of those at-home pregnancy tests and, gee, look,

19   I'm pregnant.  One line means you're not pregnant--

20       THE COURT:  It's a black--

21       MS. MABRY:  --two lines means you are.

22       THE COURT:  Okay.

23       MS. MABRY:  So she is--

24       THE COURT:  So are you saying you would want

25   perhaps one with her and the, whatever this thing is,

```
 1    EPT, in front and then one of the one perhaps with the--
 2            MR. PLUMMER:  Package.
 3            THE COURT:  If that is what that is, a package?
 4            MS. MABRY:  Yeah, the--
 5            MR. PLUMMER:  Right.  And there is one other
 6    one, your Honor, that makes some mention about two
 7    stripes means pregnant.
 8            MS. MABRY:  I--
 9            THE COURT:  You want--
10            MS. MABRY:  --think that--
11            THE COURT:  Yeah, this one says one line not
12    pregnant, two lines pregnant.
13            MR. PLUMMER:  Okay, that's the--
14            MS. MABRY:  That's--
15            MR. PLUMMER:  --one I was referring to, yes.
16            THE COURT:  So there will be three you want in?
17            MS. MABRY:  Judge, my feeling to tell you the
18    truth on this, is the fact that she's hammering on it
19    has some relevancy in and of itself, she keeps on send-
20    ing and re-sending and look at this, look at this, look
21    at this, look at this, I'm pregnant, I'm pregnant, I'm
22    pregnant, I'm pregnant, I'm pregnant, I think that says
23    something--
24            THE COURT:  Well, I think you can pick one out
25    of the device, whatever that thing is with her face in
```

149

1    the background, the one line not pregnant, two lines

2    pregnant and it there is one other one, I really can't

3    tell what this thing is with a package in it.

4         MS. MABRY:   There is one that has a--a package,

5    she printed in one line not pregnant, two lines preg-

6    nant, that definitely I would--

7         THE COURT:   That comes in--

8         MS. MABRY:   --argues comes in.

9         THE COURT:   Yes.

10        MS. MABRY:   And there is another one after that

11   9:22:58 that is a clear picture of easy to read, and it

12   shows the two lines.

13        THE COURT:   Right.

14        MS. MABRY:   That has--

15        THE COURT:   That one.

16        MS. MABRY:   Well, it doesn't have her face in it

17   I believe--

18        THE COURT:   No, but--

19        MS. MABRY:   --that should be admissible.

20        THE COURT:   The same blouse behind it though

21   that is wearing where her face is shown in the earlier

22   picture.

23        MS. MABRY:   Right.

24        THE COURT:   So pick out one with her holding the

25   device--

150