**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**SHAREE MILLER,**

       **Petitioner,**

**vs**                            **Case No: 05-73447**
                               **HONORABLE VICTORIA A. ROBERTS**

**CLARICE STOVALL, Warden**
**Robert Scott Correctional Facility,**

       **Respondent.**
_____/

**OPINION AND ORDER CONDITIONALLY**
**GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

**I.**     **INTRODUCTION**

Before the Court is Sharee Paulette Miller's ("Petitioner")" Objections to

Magistrate's Report and Recommendation and Request for Oral Argument. The Court

held oral argument on August 8, 2008.

For the reasons stated below, the Court:

(1)    **GRANTS in part and DENIES in part** the Objections;

(2)    **ADOPTS in part and REJECTS in part** the reasoning of the Report and

       Recommendation;

(3)    **REJECTS** the recommendation of the Report and Recommendation; and

(4)    **CONDITIONALLY GRANTS** the Petition for Writ of Habeas Corpus.

**II.**    **BACKGROUND**

Following a jury trial in Genesee County Circuit Court on January 29, 2001,

1

Petitioner was convicted of conspiracy to commit first-degree murder and second-degree murder, as an aider and abettor.  Bruce Miller was the victim's husband.  Petitioner allegedly conspired to have him killed by her lover, Jerry Cassaday.  The state court judge sentenced Petitioner to life in prison on the conspiracy conviction, and a concurrent term of 54-81 in prison on the second degree murder conviction.

Petitioner appealed as a matter of right to the Michigan Court of Appeals on the following grounds:

> (1) The trial court violated the Michigan Rules of Evidence and Petitioner's Confrontation Clause rights by admitting, over objection, hearsay testimony from a suicide note, AOL instant messages, and emails between Petitioner and her alleged coconspirator;
>
> (2) The prosecutor and the trial court violated Petitioner's due process right to a fair trial by permitting over objection, emails including semi-nude and erotic photographs and videotape of Petitioner, which the Court opined in the presence of the jury was pornographic; and
>
> (3) The trial court violated Petitioner's due process right to a fair trial by permitting over objection, the admission of  gruesome photographs of her alleged coconspirator depicting a bullet hole in his head while sitting in a recliner with an open bible in his lap.

The Michigan Court of Appeals found no merit to these claims and denied Petitioner's appeal on June 24, 2003.  *People v. Miller*, No. 233018, 2003 WL 21465338 (Mich. Ct. App. June 24, 2003) (per curiam).

On March 8, 2004, the United States Supreme Court decided *Crawford v. Washington*, 541 U.S. 36 (2004), which significantly altered Supreme Court Confrontation Clause jurisprudence.  On April 1, 2004, the Supreme Court of Michigan denied Petitioner's request for leave to appeal.  *People v. Miller*, 469 Mich. 1029, 679 N.W.2d 66 (Mich. 2004).  Petitioner filed a motion for rehearing in light of *Crawford*,

which was denied on June 30, 2004.  *People v. Miller*, 682 N.W.2d 93 (Mich. 2004).

Petitioner applied for a writ of habeas corpus on September 7, 2005.  The

Petition argues:

(1) She was denied her Sixth Amendment right to Confrontation when the state court decided her case contrary to and unreasonably applied clearly established federal law;

(2) The state court made an unreasonable determination of facts when it admitted hearsay evidence; and

(3) The state court violated Petitioner's due process rights by permitting the introduction of prejudicial and irrelevant evidence, which cumulatively had the effect of violating her right to a fair trial.

The R&R incorporates the Michigan Court of Appeal's statement of facts:

On November 9, 1999, [Petitioner's] husband, [Bruce Miller] was shot and killed at [B&D Auto, his auto shop business].  Three months later, [Petitioner's] lover, [Jerry] Cassaday, committed suicide.  Cassaday left a suicide note that described how [Petitioner] and Cassaday had planned to kill [Bruce Miller], and it also described how Cassaday followed through with the plan and killed [Bruce Miller].  Cassaday also left a copy of America On Line ("AOL") "instant messages" he exchanged with [Petitioner] on November 7, 1999, and November 8, 1999, which detailed their scheme to kill [Petitioner's] husband.  Also, numerous e-mail communications between [Petitioner] and Cassaday were recovered from Cassaday's computer hard drive.  Cassaday and [Petitioner] wrote the e-mails between August and November 1999 and they reveal the extent of their relationship, their future plans to marry, [Petitioner's] false claim that she was pregnant, and her desire to kill her husband.
          At trial, [Petitioner] denied any involvement in her husband's murder. However, based on the above evidence, prosecutors argued that [Petitioner] manipulated Cassaday into killing her husband by claiming that her husband abused her.  Prosecutors also presented evidence that, on two occasions, [Petitioner] falsely told Cassaday that she was pregnant with his children, but that the unborn babies died from her husband's abuse.  The jury convicted Miller of conspiracy to commit first-degree murder and second-degree murder [as an aider and abettor].

R&R at 4-5; *Miller*, 2003 WL 21465338, at *1.

This summary omits reference to an important circumstance detailed in

Petitioner's statement of facts:

> Within 24 hours of Bruce Miller's death the police had a suspect: John Hutchinson.  Both Hutchinson and Bruce Miller were the targets of an ongoing criminal investigation by the Genesee County Auto Investigation Network for tampering with Vehicle Identification Numbers (VIN).  Though Hutchinson denied any involvement with the VIN switching, he was ultimately charged with two felony counts before pleading guilty to a misdemeanor charge.  Harold Hutchinson, John Hutchinson's brother and an employee at B&D, testified that prior to the murder, John Hutchinson had threatened to "dispose of" Bruce Miller because of both the criminal investigation and a dispute over a loan.  Harold Hutchinson also testified that around 7:00 p.m. on the night of the murder, John Hutchinson told Harold Hutchinson on the phone that he had "disposed of Bruce Miller."  Harold Hutchinson understood John to mean that John had killed Bruce Miller.
> The morning after the murder, before learning of Bruce Miller's death, John Hutchinson's step-son Anthony Birch told police that, on the night of the murder, John Hutchinson was not home between 5:30 and 7:30, and that when John Hutchinson returned home he was acting "strange."
> The prosecution successfully barred Mrs. Miller from introducing into evidence results of a polygraph test that indicates that John Hutchinson was "deceptive" when denying his involvement in Bruce Miller's murder.

Petition at 9-10 (internal citations omitted).

The Magistrate recommends the Court deny the Petition.  Although he found that Petitioner's Confrontation Clause rights were violated by the admission of Cassaday's suicide note, and that the Michigan Court of Appeals unreasonably applied the clearly established law of *Crawford*, he determined this error was harmless.  The Magistrate found the Petition otherwise lacked merit.

Petitioner objects to the Magistrate's Report and Recommendation ("R&R") on several grounds:

> (1) In addition to being an "unreasonable application of" clearly established federal law as found by the Magistrate, the admission of the suicide note was "contrary to" clearly established law;
>
> (2) Respondent waived any objection that the constitutional violation of admitting the suicide note was harmless;

(3) The Magistrate erred in finding that admission of the suicide note was harmless;

(4) The Magistrate erred in finding the instant messages were not testimonial;

(5) The Magistrate erred in finding Cassaday's instruction to his brother did not implicate the Confrontation Clause; and

(6) The Magistrate erred in concluding that the admission of inflammatory evidence did not violate Petitioner's right to a fair trial.

## III.     STANDARD OF REVIEW

### A.     Generally

Because she filed her petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its provisions govern. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).

### B.     § 2254(d)

Under AEDPA, § 2254(d) governs the Court's habeas corpus review of state court decisions:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, *clearly established Federal law, as determined by the Supreme Court of the United States*; or
>
> (2) resulted in a decision that was based on an *unreasonable determination of* the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  The "contrary to" and "unreasonable application of" prongs are independent.  A state court decision can be both "contrary to" and "an unreasonable application of" "clearly established" law. *Williams v. Taylor*, 529

U.S. 362, 385 (2000).  The arguments underlying Petitioner's Objections implicate only subsection (1) of § 2254(d).

**1.      Clearly Established Law**

"Clearly established Federal law" includes law that qualifies as an "old rule" under *Teague v. Lane*, 489 U.S. 288 (1989), with the additional limitation that it is restricted to Supreme Court precedent.  *Williams,* 529 U.S. at 379-384.  Under *Teague*, an old rule is defined as one which does not break new ground or impose a new obligation on the states or the federal government, or is "dictated by precedent existing at the time the defendant's conviction became final.  *Id.* at 381.

This Court is to be guided by law that was clearly established at the time Petitioner's conviction became final.  *Stallings v. Bobby*, 464 F.3d 576, 581 (6th Cir. 2006).  "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  Clearly established law refers only to the holdings -- not dicta. *Id.* at 71.  Further, an explicit statement by the Supreme Court is unnecessary; 'the legal principles and standards flowing from Supreme Court precedent also qualify as 'clearly established law.'"  *Lakin v. Stine*, 431 F.3d 959, 961 (6th Cir. 2005).

Notwithstanding this guidance, the path to identification of "clearly established law" is not always clear.  *Andrade* addressed the lack of clarity under the "unreasonable application" prong of § 2254(d).  *See Andrade,* at 72-73; *see also* Melissa M. Berry, *Seeking Clarity in the Federal Habeas Fog: Determining What Constitutes "Clearly Established" Law Under the Antiterrorism and Effective Death Penalty Act*, 54 Cath.

U.L. Rev. 747, 773-783 (2005).

A commentator cited by the Tenth Circuit summarized the inquiry into "clearly established" law as follows:

> [T]he Supreme Court's decisions in *Williams*, *Andrade*, and *Alvarado* provide a context for understanding the meaning of clearly established law. First, they define clearly established law as the Court's holdings and (revealing a broad reading of the requirement) reasonable applications of the Court's precedent. Second, they instruct that the determination of clearly established law should be a threshold issue. Where the Court's precedents were not "clear," it did not deny relief on that basis alone. Instead, it analyzed the clarity of the law under the unreasonable application prong. Third, these decisions confirm that broad principles can qualify as clearly established law, but they also reveal that the broader the principle, the more likely the state court's decision will be reasonable.

Berry, *supra* at 788.

The Magistrate correctly determined that Petitioner's conviction became final on September 28, 2004, ninety days after the Michigan Supreme Court denied her motion for rehearing. *Onifer v. Tyskiwicz*, 255 F.3d 313, 317-318 (6th Cir. 2001); R&R at 12-14. The Court must examine clearly established federal law as of September 28, 2004.

**2.     Contrary to Clearly Established Law**

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams,* 529 U.S. at 413. Citing *Williams*, the Sixth Circuit explains that "[a] state-court decision is considered 'contrary to . . . clearly established federal law' if it is 'diametrically different, opposite in character or nature, or mutually opposed.'" *Ivory v. Jackson*, 509 F.3d 284, 291 (6th Cir. 2007) (quoting *Williams*, 529 U.S. at 405); *Mahdi v. Bagley*, No. 05-3471, 2008 U.S. App.

LEXIS 14260, at *14 (6th Cir. July 7, 2008) (unpublished).

The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established law. *Early v. Packer*, 537 U.S. 3, 8 (2002). Indeed, a decision may comport with clearly established law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.*

### 3. Unreasonable Application of Clearly Established Law

An "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of a prisoner's case." *Williams,* 529 U.S. at 413. A district court must apply an objective test of reasonableness in deciding whether there has been an "unreasonable application." *Id.* at 410-411. A reasonable application includes at least those instances where fair-minded jurists could disagree about the state court's conclusion. *See Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("Ignoring the deferential standard of § 2254(d)(1) for the moment, it can be said that fair-minded jurists could disagree over whether [the peitioner] was in custody."). There is an important distinction between unreasonable and erroneous, and it is not enough to find that a state court decision applied clearly established federal law erroneously or incorrectly; the application must also have been unreasonable. *Williams,* 529 U.S. at 409-413*; Ivory*, 509 F.3d at 291.

When determining whether a state court reasonably applied Supreme Court precedent, district courts are not limited to the precise, narrow, fact-specific results of

Supreme Court decisions. "[A] state court decision makes 'an unreasonable application of this Court's precedent' when the court 'unreasonably extends a legal principle from our precedent to a new context where it should not apply . . . ' but, . . . a lower court also errs when it 'unreasonably refuses to extend that principle to a new context where it should apply.'" *Withrow*, 288 F.3d at 851 (quoting *Williams*, 529 U.S. at 407) (emphasis omitted); *see also McCalvin v. Yukins*, 444 F.3d 713, 719-722 (6th Cir. 2006) (refusing to extend principle on several grounds).

In *Yarborough v. Alvarado*, Justice Kennedy summarizes the general approach district courts should employ when examining the reasonable application of clearly established federal law:

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

*Yarborough*, 541 U.S. at 664 (internal citations omitted).

## C.      § 2554(a)

Satisfaction of § 2254(d) is not enough to grant the writ. Petitioners must also meet the requirements of § 2254(a):

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

The Sixth Circuit recently made clear that under § 2254(a), a petitioner may not obtain relief on the basis of a state court decision that was "contrary to" or an "unreasonable application of" a Supreme Court precedent that is no longer good law. *Desai v. Booker*, No. 08-2096, 2008 U.S. App. LEXIS 17309, at *7-15 (6th Cir. Aug 15, 2008) (published).

The Magistrate correctly reasoned that the overturned Supreme Court precedent of *Roberts* is irrelevant, and Petitioner's only cognizable claim under § 2254 is a state court decision that was "contrary to" or "an unreasonable application of" *Crawford*.

## IV.     ANALYSIS

### A.     The Court Must "Look Through" the Supreme Court of Michigan Standard Orders to the Michigan Court of Appeals Explained Decision

When deciding a habeas petition under § 2254 the Court must look to the last explained, reasoned state court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-806 (1991); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991); *Griffin v. Berghuis*, 298 F. Supp. 2d 663, 672 (E.D. Mich. 2004).

### B.     The Court's Analysis of the State Court Decision

### 1.     The Suicide Note

#### i.     The Decision Was Not Contrary to the Clearly Established Law of Crawford

The Michigan Court of Appeals decision was not contrary to *Crawford*.  The state court applied the correct governing law, but unreasonably found that the suicide note was not testimonial, and applied *Roberts*.  Because at the time the conviction became

final the application of *Roberts* was not "'diametrically different, opposite in character or nature, or mutually opposed,'" to *Crawford*, the state court decision was not "contrary to" *Crawford*. *Ivory*, 509 F.3d at 291(quoting *Williams*, 529 U.S. at 405); *Mahdi*, 2008 U.S. App. LEXIS 14260, at *14; *Crawford*, 541 U.S. 36.

The Court denies this objection.

### ii.     The Michigan Court of Appeals Decision Was an Unreasonable Application of *Crawford*

At oral argument, Respondent took the position that the possible applicability of a dying declaration exception to the Confrontation Clause somehow bound the Court to the state's supposed evidentiary ruling that the suicide note was a dying declaration. That argument is without merit.

This Court's review solely focuses on the violation of the Constitution as interpreted by the Supreme Court. *See Calvert v. Wilson*, 288 F.3d 823, 830 (6th Cir. 2002) (citing *Lilly*, 527 U.S. at 134) ("The *Lilly* Court first said that *it was irrelevant* that all statements against penal interest of an unavailable witness were treated as firmly rooted exceptions to the hearsay rule under Virginia law.") (emphasis added).

The Magistrate noted that it is not clear whether the Supreme Court accepts a dying declaration exception to Confrontation Clause protections, *Crawford v. Washington*, 541 U.S. 36, 56 n.6 (2004). This Court adopts the Magistrate's reasoning and conclusion that the suicide letter was not a dying declaration under Supreme Court precedent. Moreover, the trial court did not admit the suicide note as a dying declaration; it admitted it under the state's residual exception rule. *Miller*, 2003 WL 21465338 at *2; MRE 804(b)(7) (previously codified as 804(b)(6)).

11

### iii.    Harmless Error

#### a.    Generally

Confrontation Clause errors are subject to harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *Hill v*, 337 F.3d at 718. Petitioner is not entitled to habeas relief unless the error was not harmless.

#### b.    Waiver

The Magistrate concluded that although the Michigan Court of Appeals erred in admitting the suicide note, this error was harmless. Petitioner objects that Respondent waived a harmless error argument by not raising it in its Response.

Petitioner's position has merit. The Sixth Circuit has held repeatedly that this defense to habeas corpus relief can be waived. *See Hargrave v. McKee*, 248 F. App'x 718, 728 (6th Cir. 2007) (unpublished); *Payne v. Bell*, 399 F.3d 768, 784 n.5 (6th Cir. 2005) *withdrawn on other grounds and substituted by Payne v. Bell*, 418 F.3d 644 (6th Cir. 2005) *see also United States v. Ford*, 184 F.3d 566, 578 n.3 (6th Cir. 1999).

In addition, a plain reading of § 2254 does not contradict, and in fact strengthens, the Court's view that Respondent's argument is waived. Although not mentioned by Petitioner, the Court notes that § 2254 directly addresses the question of waiver under § 2254(b)(3). The subsection provides that "[a] State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3). This statement is the only reference to waiver within the text of § 2254. This provision

indicates that Congress believed waiver was possible under § 2254, and acted only to limit its availability when exhaustion and estoppel are at issue.

Respondent waived a harmless error argument by not raising it in her brief. Therefore, the Court grants the objection.

### c.    The Error Was Not Harmless

Even if Respondent did not waive a harmless error argument, the error was not harmless.  "The Supreme Court recently made clear 'that in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*, whether or not the state appellate court recognized the error and reviewed it for harmlessness.'" *Hargrave*, 248 F. App'x at 728 (internal citations omitted) (quoting *Fry v. Pliler*, 127 S. Ct. 2321, 2328 (2007)); *Jensen v. Romanowski*, No. 06-11605, 2008 U.S. Dist. LEXIS 34809, at *17-18 (E.D. Mich. Apr. 29, 2008); *Brecht v. Abrahamson,* 507 U.S. 619 (1993).  Thus, "'[o]n collateral review, an error is deemed harmless unless it 'had a substantial and injurious effect or influence in determining the jury's verdict.'"  *Hamilton v. Morgan*, 474 F.3d 854, 867 (6th Cir. 2007) (quoting *Stapleton v. Wolfe*, 288 F.3d 863, 867 (6th Cir. 2002)).  If the Court is uncertain, but has "'grave doubt' as to the harmlessness of the error, it 'should treat the error, not as if it were harmless, but as if it affected the verdict . . . .'"  *Id.*

*Delaware. v. Van Arsdall* sets forth the factors to consider in harmless error analysis:

(1) the importance of the witness' testimony in the prosecution's case;

(2) whether the testimony was cumulative;

(3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points;

(4) the extent of cross-examination otherwise permitted; and

(5) the overall strength of the prosecution's case.

*Van Arsdall*, 475 U.S. at 684; *Vasquez v. Jones*, 496 F.3d 564, 574-575, 574 n.8 (6th Cir. 2007) (quoting *Van Arsdall*, 475 U.S. at 684); *Hill*, 337 F.3d at 718 (specifically addressing second degree murder under Michigan law); *Romanowski*, 2008 U.S. Dist. LEXIS 34809, at *17-19.

It is important to note that although corroboration is irrelevant to an initial determination of a Confrontation Clause violation, *Lilly,* 527 U.S. at 137-138 (1999) (citing *Wright v. Idaho*, 497 U.S. 805, 822-823 (1990)), it is a relevant factor under the harmless error analysis. *Bobby*, 464 F.3d at 582-583*; Hill*, 337 F.3d at 715-716.

After determining the Michigan Court of Appeals unreasonably applied *Crawford*, the Magistrate analyzed the error as harmless:

> Nevertheless, the Court should conclude that the error in the admission of this evidence was harmless, and that petitioner is therefore not entitled to habeas relief. In *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the Supreme Court ruled that trial error does not entitle state prisoners to habeas relief unless the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Confrontation Clause violations are subject to harmless error analysis. *See Lilly v. Virginia*, 527 U.S. 116, 139-40 (1999). Viewed in isolation, Cassaday's suicide note implicating petitioner was certainly damaging. However, in the context of the trial, the statement was cumulative of, and less significant than, petitioner's own statements describing her role in the crimes as reflected in the instant messages between her and Cassaday. Significantly, Cassaday's suicide note states only that petitioner was involved, without providing any details of that

involvement. The instant messages, on the other hand, show in detail petitioner's active involvement in the instigation and planning of the murder. In these circumstances, where the improperly admitted evidence is cumulative of more damaging evidence which was properly admitted, it cannot be said that the admission of the note had a substantial and injurious effect on the jury's verdict. *Cf. United States v. Meserne*, 271 F.3d 314, 330 (1st Cir. 2001); *United States v. Abadie*, 879 F.2d 1260, 1264 (5th Cir. 1989). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this ground, notwithstanding the trial court's error in admitting the suicide note.

R&R at 23-24.

Petitioner objects to this conclusion because: (1) the prosecution relied heavily on the suicide note; (2) the evidence was not cumulative; (3) strong evidence implicated another suspect; (4) the suicide note lacked descriptive detail; and (5) the overall weakness of the evidence.

The Magistrate primarily relied on two court of appeals decisions with citation with "Cf.," from outside the Sixth Circuit on direct review of federal district court evidentiary rulings, *United States v. Abadie*, 879 F.2d 1260, 1265 (5th Cir. 1989) and *United States v. Meserve*, 271 F.3d 314, 332 (1st Cir. 2001). However, neither case has been cited within the Sixth Circuit, nor do they directly address the *Brecht standard and Van Arsdall* factors, all of which must be considered. *See Bobby*, 464 F.3d at 582. Moreover, the Magistrate failed to specifically address, and differentiate the elements of, the two crimes for which Petitioner was convicted. R&R at 24. Faced with a harmless error inquiry for a second degree murder conviction, the Sixth Circuit explained:

In determining whether the error in this particular case is harmless, we must decide whether the other evidence, including [Petitioner's] own statement, *is overwhelming and sufficient to establish the elements of second-degree murder and armed assault with intent to rob beyond a reasonable doubt.*

15

> Otherwise, we must find that the introduction of [the witness'] statement actually prejudiced [Petitioner], [and therefore,] had a "substantial and injurious effect" under *Brecht* . . . .

*Hill*, 337 F.3d at 718 (emphasis added); *Hargrave*, 248 F. App'x at 728 ("[The witness'] testimony was integral to the prosecution's case, as she was the only eyewitness to the alleged crimes and was the only witness who could provide any testimony regarding two necessary elements of the crime of carjacking . . . ."); *see also e.g. Robinson v. Gundy*, 174 F. App'x 886, 893 (6th Cir. 2006) (unpublished) ("The evidence against [petitioner] was truly overwhelming.").

## I.    Conspiracy

Under Michigan law, "conspiracy requires proof of the unlawful agreement; nothing further is required." *Northington v. Elo*, No. 97-1590, 1999 U.S. App. LEXIS 3576, at *9 (6th Cir. Mar. 3, 1999) (unpublished) (citing *People v. Burgess*, 153 Mich. App. 715, 396 N.W.2d 814, 825 (Mich. Ct. App. 1986)).  The prosecution must "establish that defendant intended to combine with two or more persons to accomplish first-degree murder." *People v. Merko*, No. 271800, 2008 Mich. App. LEXIS 590, at *6 (Mich. Ct. App. Mar. 20, 2008) (unpublished) (citing *People v Justice*, 454 Mich. 334, 345; 562 N.W.2d 652 (1997)).  "The crime is complete upon formation of the agreement." *Justice*, 454 Mich. at 346.

In addition, "[f]or intent to exist, the defendant must know of the conspiracy, must know of the objective of the conspiracy, and must intend to participate cooperatively to further that objective." *Merko*, 2008 Mich. App. LEXIS 590, at *6 (citing *People v. Blume*, 443 Mich. 476, 485; 505 N.W.2d 843 (Mich. 1993)).  Noting that "[i]dentifying the

objectives and even the participants of an unlawful agreement is often difficult because of the clandestine nature of criminal conspiracies," the Supreme Court of Michigan held "direct proof of the conspiracy is not essential; instead, proof may be derived from the circumstances, acts, and conduct of the parties," and that "[i]nferences may be made because such evidence sheds light on the coconspirators' intentions." *Justice*, 454 Mich. at 347.

Reliance on the cumulative nature of the suicide note and the instant message has some merit. All that the prosecution needed to demonstrate was an agreement to cooperate in the murder of Mr. Miller. As the Magistrate noted, "[t]he instant messages . . . show in detail Petitioner's active involvement in the instigation and planning of the murder, and a suicide note confirming the murder took place, and Petitioner's involvement, is arguably cumulative evidence of an agreement to commit murder." R&R at 24. However, under *Van Arsdall*, the cumulative nature of the evidence in relation to the conspiracy conviction is just one of several factors the Court must examine, and the additional factors leave the Court with "serious doubt" about the harmless nature of the error.

First, the instant messages were, at least somewhat, susceptible to forgery. The jury appears to have accepted the instant messages as a non-forgery. However, "a federal habeas court need not defer to the state-court factfinder's credibility determinations when reviewing an error for harmlessness." *Vasquez*, 486 F.3d at 148 (citing *Fulcher v. Motley*, 444 F.3d 791, 809 (6th Cir. 2006)). Doubt was cast on the origin of the instant message recordings during trial. The inclusion of the suicide note served to corroborate the veracity of instant message recordings, and without this note,

17

the authenticity of the recorded instant messages is thrown into stronger doubt. *Bobby,* 464 F.3d at 582-583 ("[The] jury could have believed that the . . . [the] statements 'reinforced and corroborated each other'" and that "without one . . . the fact-finder might not have believed the other.")*; Hill*, 337 F.3d at 715-716. Moreover, no other evidence besides the suicide note and the instant message recordings provided strong evidence of *an agreement* to kill Mr. Miller; thus, the existence of one piece of evidence reinforced the other.

Second, "the extent of cross-examination otherwise permitted" would have been the full cross-examination of Cassaday and his allegations, which were the impetus and foundation of the charges against Petitioner. Third, the overall strength of the prosecution's case was not strong, relying only on circumstantial evidence. While it is true that "direct proof of the conspiracy is not essential," the use of circumstantial evidence is nonetheless less powerful evidence of a conspiracy, and the nature of the evidence must be taken into account when evaluating harmlessness. *Justice*, 454 Mich. at 347.

Although it is a close question, the Court is left with a "grave doubt" concerning the harmlessness of the error. *Morgan*, 474 F.3d at 867; *Stapleton*, 288 F.3d at 867.

The Court grants the objection on this conviction.

## II.    Second Degree Murder

To prove second degree murder under Michigan law, the State must prove that there was: (1) a death; (2) caused by an act of the defendant; (3) with malice; and (4) without justification or excuse. *Hill*, 337 F.3d at 719 (citing *People v. Goecke*, 579 N.W.2d 868, 878 (Mich. 1998)). The suicide note is not cumulative to the instant

message recordings for the second element of second degree murder: a death was caused by the defendant. *See Hargrave*, 248 F. App'x at 728.

Indeed, the suicide letter is the only strong evidence supporting the finding that Cassaday "caused" Mr. Miller's "death," and the prosecution did not offer physical evidence linking Cassaday or Petitioner to the murder of Bruce Miller. *See Vasquez*, 486 F.3d at 148 ("No physical evidence linked the accused to the murder weapon."). Nor can Respondent argue that the aiding and abetting theory under which Petitioner was convicted commands a different result. Even a vicarious liability theory requires a "death" "caused" by the principal, the point on which the suicide note was the only strong evidence. *See People v. Robinson*, 475 Mich. 1, 6 (Mich. 2006).

Thus, the suicide note was especially important evidence for the second degree murder charge; it is the only strong evidence available to prove Cassaday – not a different viable suspect – actually carried out the murder. There is no corroboration of this evidence of the *murder* of Mr. Miller *by Cassaday*. *Hill*, 337 F.3d at 715-716.

If anything, evidence points to a different suspect. The "extent of cross-examination otherwise permitted" would have been the full cross-examination of Cassaday, and his allegations, which were the impetus and foundation of the charges. The overall strength of the prosecution's case was even weaker for the second degree murder charge than it was for conspiracy, because the suicide note is the only evidence that Cassaday actually killed Mr. Miller. During closing argument, the prosecution specifically pointed to the suicide note to respond to the argument that there was another viable suspect.

Lastly, the Michigan Court of Appeals's admission of the suicide note under MRE

804(b)(7) (previously codified as MRE 804(b)(6)), because it was "more probative on the point for which it was offered than any other evidence which the proponent could procure through reasonable efforts," undercuts the argument that it was not very important evidence, on the charge of second degree murder. *See Dorchy v. Jones*, 398 F.3d 783, 791 (6th Cir. 2005).

In light of these facts, the Court is left with a "grave doubt" as to the harmlessness of the error on the conviction for second degree murder. *Morgan*, 474 F.3d at 867; *Stapleton*, 288 F.3d at 867.

**2.      The Instant Message Recordings**

The Court adopts the Magistrate's reasoning and conclusion and denies the objection.

**3.      Instructions to Brother**

Review of Petitioner's brief to the Michigan Court of Appeals reveals this claim was not raised on appeal in the state court proceedings. Therefore, the Court cannot grant relief; Petitioner failed to meet exhaustion requirements of § 2254(b)(1). *Hannah*, 49 F.3d at 1195; *Magett*, 2008 U.S. Dist. LEXIS 44408, at *5; Petition at 2-3.

**3.      The Prejudicial Evidence**

**i.      Evidentiary Rulings**

Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding. *Coleman v. Mitchell*, 244 F.3d 533, 542-543 (6th Cir. 2001); *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988). Only where the violation of a state's

evidentiary rule results in the denial of fundamental fairness, thereby violating due process, will federal courts provide habeas corpus relief. *Cooper*, 837 F.2d at 286. "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they offend . . . some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (quotation omitted). A state court evidentiary ruling will be reviewed by a federal habeas court only if it were so fundamentally unfair as to violate the petitioner's due process rights. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000).

The Magistrate correctly ruled on this claim. The Court adopts his reasoning and denies the objection.

### ii. The Cumulative Effect of Prejudicial Evidence

The Sixth Circuit holds cumulative constitutional errors are not cognizable habeas claims. *See Cross v. Stovall*, 238 F. App'x 32, 41 (6th Cir. 2007) (unpublished); *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) ("[T]he law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue. No matter how misguided this case law may be, it binds us.") (citation omitted); *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005) ("[N]ot even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief."); *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002); *Stallings v. Bagley*, No. 05-722, 2008 U.S. Dist. LEXIS 26196, at *50 n.8 (N.D. Ohio Mar. 31, 2008).

Petitioner's claim for cumulative constitutional errors from admission of prejudicial evidence is without merit. In contrast, Petitioner *may* allege the admission of

a single piece of evidence was so prejudicial on its own, that it resulted in a violation of her due process rights.

However, Petitioner does not object to the Magistrate's conclusion that none of the evidence, standing alone, was so prejudicial that its admission violated Defendant's right to due process.  Moreover, the Court adopts the Magistrate's reasoning and conclusion that the independent admission of the evidence was not so prejudicial that it violated due process.  *Coleman*, 244 F.3d at 542; *Cooper*, 837 F.2d at 286; R&R at 27-30.

The Court denies the objection.

## V.    CONCLUSION

The Court:

(1)    **GRANTS in part and DENIES in part** the Objections.  The Court
**GRANTS** Petitioner's objections to the Magistrate's conclusion that
admission of the suicide note was harmless error, and that harmless error
was not waived and **DENIES** the Petitioner's objections regarding the
instant messages, Cassady's instructions to his brother, and inflammatory
evidence.

(2)    **ADOPTS in part and REJECTS in part** the reasoning of the Report and
Recommendation,

(3)    **REJECTS** the recommendation of the Report and Recommendation; and

(4)    **CONDITIONALLY GRANTS** the Petition for Writ of Habeas Corpus
because the admission of the suicide note was an unreasonable
application of *Crawford*, Respondent waived harmless error, and the

admission of the suicide note was not harmless.

The State must take steps to retry Petitioner within 60 days, or release her.

**IT IS ORDERED**.

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  August 27, 2008

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 27, 2008.

s/Linda Vertriest
Deputy Clerk